**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Benny SHAFFNER,**
**Defendant-Appellant.**

**No. 75–1324.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 25, 1975.

Decided Oct. 28, 1975.

Certiorari Denied Feb. 23, 1976.
See 96 S.Ct. 1126.

---

**1022**

Stephen W. Voelker, Jeffersonville, Ind., for defendant-appellant.

John E. Hirschman, U. S. Atty., Richard L. Darst, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, and SPRECHER and BAUER, Circuit Judges.

BAUER, Circuit Judge.

Defendant-appellant, Benny Shaffner, along with three others, was indicted on November 25, 1974 on one count charging that he robbed the Union National Bank of New Albany, Indiana of approximately $6,123.00 on September 12, 1974 in violation of 18 U.S.C. § 2113(d).[1]

Before trial co-defendants Phillip Dale Banks, Michael Edward Gant, and William Paul Johnson pled guilty. Appellant Shaffner stood trial and was found guilty by a jury. He received a fifteen year sentence to run concurrently with other existing sentences.

The facts brought out at trial indicate that Shaffner and the other three co-defendants entered the bank in New Albany wearing disguises and carrying guns. While inside the bank Shaffner held a gun on two customers, Mr. and Mrs. Fisher. Other customers were required to lie face down on the floor. At trial, the Fishers identified Shaffner as the person that held them at gunpoint while the others filled pillowcases with money. In addition, the three co-defendants testified at trial admitting their roles and implicating Shaffner. On appeal Shaffner does not challenge the sufficiency of the evidence but contends that the trial court committed reversible error in admitting evidence of co-defendant Gant's confession, in instructing the jury on the definition of reasonable doubt, and in failing to dismiss the indictment on the grounds of misconduct on the part of local law enforcement officers. We affirm the conviction.

■ The defendant's first argument concerns the confession of co-defendant Michael Edward Gant. The record shows that during cross-examination Gant testified that in October 1974 he was arrested on certain charges in Kentucky not involving the federal authorities. Three days earlier he had eluded the Jefferson County, Kentucky Police Force. After he was arrested by the city police in Louisville the county police were notified. When the county police arrived, one policeman struck Gant. The city police intervened on behalf of Gant and there was no actual beating other than this one "hit." Shortly thereafter Gant gave a full confession to the Federal Bureau of Investigation concerning the bank robbery and later testified at trial that his confession was of his own free will, voluntarily given, and not coerced by the authorities.

Shaffner contends that this confession was obtained through the use of force, violence, coercion and intimidation and thus all evidence of the confession should have been excluded from trial. The trial court was not required to rule on the question of whether the confession was voluntary because Gant pled guilty, testified on behalf of the government, and clearly stated that the confession was voluntary. However, assuming *arguendo* that Gant's confession was involuntary, the appellant Shaffner has no standing to contend the voluntariness of the confession for the purpose of excluding evidence. Shaffner can only argue that his own constitutional rights were violated and not the rights of a co-defendant. *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

■ We do not approve the county police officer's hitting a prisoner in custody. Such conduct is reprehensible. However, this one incident does not rise to a level of governmental misconduct

---

1. 18 U.S.C. § 2113(d) states, inter alia:

 "Whoever, in committing, or in attempting to commit . . . [bank robbery] assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

which requires the dismissal of an indictment. Shaffner cites *United States v. Banks*, 383 F.Supp. 389 (S.D.1974) in seeking the dismissal of the indictment. However in that case the court found a lengthy pattern of conduct by federal authorities that it believed to be inappropriate. Nothing of the kind is present in this case. The trial judge here found no merit in the dismissal motion. He satisfied himself by personally questioning witnesses about the voluntariness of the confession and the conduct of the government during the investigation and trial.

The next contention advanced by the appellant is that the trial judge improperly instructed the jury on the meaning of reasonable doubt. At trial defense counsel objected to the instruction offered by the government and suggested a more neutral instruction which did not attempt to define the term reasonable doubt. It is our opinion that any use of an instruction defining reasonable doubt presents a situation equivalent to playing with fire. The problem is that such an instruction is generally employed to favor one side. The most egregious section defined reasonable doubt as follows:

"It is not necessary for the government to prove the guilt of the defendant beyond all possible doubt. If that were the rule, few men, however guilty they might be, would be convicted."

 It is quite clear that this part of the instruction favors the government on the issue of reasonable doubt. However considering the instruction as a whole,[2] we do not think that the defendant's rights to be presumed innocent, to remain silent, and to have the government bear its burden of proof were violated. The precise language used by the district court in the remainder of the instruction is recommended in various sections of LaBuy's *Manual on Uniform Jury Instructions in Federal Criminal Cases*, § 6.01, 2, 3, 4, and Devitt & Blackmar's *Federal Jury Practice and Instructions*, § 11.01.

It is to be noted also that the last sentence of paragraph one of the instruction—the "two hypothesis" instruction—is usually reserved for a case bottomed on almost purely circumstantial evidence. It was certainly inappropriate in the instant proceeding.

---

**2.** The instruction in its entirety reads as follows:

"A defendant in a criminal case is presumed by law to be innocent. That presumption remains with him throughout the trial unless and until he is proven guilty of the crime charged by credible evidence beyond a reasonable doubt. Thus, if two conclusions can be drawn from the evidence, one of innocence, and one of guilt, the jury should adopt the one of innocence.

The burden of proving defendant guilty beyond a reasonable doubt rests upon the government. This burden never shifts throughout the trial. The law does not require a defendant to prove his innocence or to produce any evidence. He may rely upon evidence brought out on cross-examination of witnesses for the government. If the government fails to prove defendant guilty beyond a reasonable doubt, the jury must acquit him.

A reasonable doubt means a doubt that is based upon reason and must be substantial rather than speculative. It must be doubt sufficient to cause a reasonably prudent person to hesitate in the more important affairs of his life.

It is not necessary for the government to prove the guilt of the defendant beyond all possible doubt. If that were the rule, few men, however guilty they might be, would be convicted. In this world of ours, it is practically impossible for a person to be absolutely and completely convinced of any fact which by its nature is not susceptible of mathematical proof and certainty. In consequence, the law is such that in a criminal case, it is enough that defendant's guilt be established beyond a reasonable doubt and not all possible doubt."

We approve of this form of the instruction except for the last paragraph. Generally reviewing courts will not reverse where the instruction considered as a whole is not prejudicially erroneous. *Russell v. United States*, 429 F.2d 237, 239 (5th Cir. 1970); *United States v. Christy*, 444 F.2d 448 (6th Cir. 1971); *United States v. Taylor*, 478 F.2d 689 (1st Cir. 1973); *United States v. Joyce*, 499 F.2d 9 (7th Cir. 1974).

On many occasions courts of appeals have reversed convictions wherein improper instructions defining the terms reasonable doubt were read to the jury.[3] Yet, none of those reversals involve the use of an instruction that is present in this case. Appellant cites the recent decision by this Court in *United States v. Bridges*, 499 F.2d 179 (7th Cir. 1974) claiming that a similar instruction was found objectionable. In *Bridges* the instruction was not the same as presented here. The instruction was different in that it intimated that the reasonable doubt standard should not be used "to permit guilty men to escape." Although the instruction in this case is highly questionable it does not have the same prejudicial effect as the language in *Bridges*. Nevertheless, we do not endorse the definition of reasonable doubt used in this case and suggest that it not be given in future cases. Just recently this Court stated in *United States v. Lawson*, 507 F.2d 433 (7th Cir. 1974) that:

". . . definition [of reasonable doubt] is impossible, that the phrase is self-defining, that there is no equivalent phrase more easily understood, that every attempt to explain renders an explanation of the explanation necessary, that the better practice is not to attempt the definition, and that any effort to further elucidation tends to misleading refinements." 507 F.2d at 443.

Judge Pell's opinion in *Lawson* contains an excellent and exhaustive analy-sis of the inherent difficulties in trying to define reasonable doubt. *Lawson* was decided before the trial of this case and the instant instruction should not have been submitted. There is no doubt that in a different case in which the factual questions are largely disputed, or in which the evidence of guilt is not so overwhelming,[4] and in which the jury's decision could be swayed by some innuendo, we would reverse if such an instruction as presented here were given.

For instance in *Reynolds v. United States*, 238 F.2d 460, 16 Alaska 502 (9th Cir. 1956) the court's instruction was similar to the one in question, i. e., "[the rule] . . . is not intended to prevent the conviction of any person who is in fact guilty, or to aid the guilty to escape punishment," and the court of appeals reversed because the central issue was whether a murder or suicide was committed. Unlike *Reynolds* we think in this case that the jury had little doubt as to the defendant's participation in the bank robbery. Accordingly the error in the instruction could not have been instrumental in reaching a verdict of guilty.

Finally appellant contends that the trial court abused its discretion in denying the defendant's motion for a new trial on the ground of a prejudicial newspaper account. On the first day of the trial counsel for the government informed the court that he had been advised that threats had been made by the defendant or someone else against the other co-defendants should they take the

---

**3.** *United States v. Bridges*, 499 F.2d 179 (7th Cir. 1974); *Boatright v. United States*, 105 F.2d 737 (8th Cir. 1939); *United States v. Link*, 202 F.2d 592 (3d Cir. 1953); *United States v. Crescent-Kelvan Co.*, 164 F.2d 582 (3d Cir. 1948); *Scurry v. United States*, 120 U.S.App.D.C. 374, 347 F.2d 468 (1968); *United States v. Johnson*, 343 F.2d 5 (2d Cir. 1965).

**4.** In this case appellant did not challenge the sufficiency of the evidence. Our own reading of the record indicates that such a challenge would have been fruitless since the witness identifications and the corroborated testimony of the three other co-defendants clearly prove

that Shaffner was a participant in the crime alleged. Courts are generally hard pressed to consider part of an instruction erroneous where the totality of the instructions and the overall trial proceeding were imminently fair and the evidence of guilt is so substantial. See *Bearden v. United States*, 320 F.2d 99, 104 (5th Cir. 1963); *Engram v. United States*, 117 U.S.App.D.C. 30, 325 F.2d 226 (1963); *King v. United States*, 117 U.S.App.D.C. 302, 329 F.2d 257 (1964). LaBuy, *Jury Instructions in Federal Criminal Cases*, § 104, p. 7–8 (1965); *Shaw v. United States*, 244 F.2d 930, 17 Alaska 1 (9th Cir. 1957).

stand and testify. Safeguards were requested by the court. An account of this threat was carried in the local newspaper. Yet, there is no evidence in the record to indicate that any of the jurors read the newspaper article. The district court throughout the trial admonished the jury not to read any newspaper reports dealing with the trial nor to listen or observe any radio or television accounts. There is no indication that any juror disregarded the court's admonition. Thus the record fails to support the appellant's assertion that the court abused its discretion in denying his motion for a new trial.

Affirmed.