**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Darryl K. WRIGHT, Defendant-Appellant.**

**No. 76–1007.**

United States Court of Appeals,
Seventh Circuit.

Argued June 16, 1976.
Decided Sept. 27, 1976.

Frank E. Spencer, Indianapolis, Ind., for defendant-appellant.

James B. Young, U. S. Atty., Charles Goodloe, Jr., Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before SWYGERT, CUMMINGS and PELL, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from a judgment following a jury conviction of the defendant Darryl K. Wright on both counts of an indictment charging him with knowing and intentional distribution of heroin, a Schedule (I) controlled substance, in violation of 21 U.S.C. § 841(a)(1). On this appeal, Wright's challenges fall within two broad categories, claimed erroneous evidentiary rulings and errors in instructing the jury.

The two distributions were charged in the indictment as occurring on December 12, 1974, and January 2, 1975. Other than a forensic chemist for the Drug Enforcement Administration who testified that in his opinion the material in the exhibits allegedly sold on those dates was heroin, the Government's case was principally presented by Special Agent Herman D. Hogue of the Drug Enforcement Administration and John Ellis Smith, an informant for the Administration. Both testified to a conversation with Wright about heroin on November 25, 1974, and a sale by Wright on December 12, 1974. Hogue testified to the January 2, 1975, purchase. In addition to three character witnesses, the defense testimony came from Wright and his wife, who testified that neither Hogue nor Smith were in their residence on either date. Wright testified that he had never distributed heroin to anyone, had not seen it, and had not used it. On this appeal, he quite properly does not challenge the sufficiency of the evidence for conviction.

I

A

The first two particularized issues raised by the defendant relate to the curtailment of cross-examination of Smith, the informer. Counsel on this appeal, who was not trial counsel, concedes that the trial judge has broad discretion in respect to cross-examination but claims that the limitation here prevented a fair trial in that the defendant was prevented from impeaching Smith as to his motivation, discrediting him as to his credibility, and establishing that little weight should be given to his testimony, which, of course, in essence is saying the same thing with three variations.

During the informer's direct testimony, it was established that he had been convicted of armed robbery in 1972 for which he had received a sentence of ten years imprisonment, and that he had been convicted of robbery in 1975 for which the sentence was ten to twenty-five years imprisonment. On cross-examination the informer testified that he was presently residing at the Indiana State Prison; that he was addicted to drugs during the time to which his testimony related being November and December 1974; that the addiction was to heroin; that he had been so addicted for about six years; and that a person so addicted to heroin craves the drug and would get pretty desperate for it. At this point Smith was asked "[a]s a matter of fact, your robbery was involved because you needed money—." Objection to the exploration of the details of the criminal offense was sustained.

Thereafter the following information was elicited from the informer on cross-examination. He stated that his habit cost him from $20 to $40 a day; that he was employed off and on, jobs like shipping-receiving clerk, which did not make him $40 a day; that he had to find other sources of income; that the Anderson Police Department put him in touch with Hogue after he, the informer, had been arrested for 1st degree burglary; that the burglary charge was dismissed in July 1975; that he was asked if he could help clean up the heroin traffic, or drug traffic; that he agreed to do so; that he was paid $150 or $200 a week by the Federal Government, until around December 1974; that the money was used by him to get the narcotics to which he was addicted.

■ Wright claims that his inability to pursue the question regarding Smith's involvement in robbery being motivated by the need for money precluded in some manner the defense establishing motivation which would affect his credibility. The fact of the convictions within ten years would properly have been admissible. Indeed, the Government apparently realizing this to be true brought out the information on direct testimony. Ordinarily, establishing the fact of conviction for impeachment is the end of the inquiry. The defendant here attempts to justify further pursuit on a motivation theory. In view of the wide latitude given to the defense in its cross-examination of Smith, we cannot conceive that all possible alternative reasons for Smith's testifying for the Government were not exhaustively covered even if the jury ignored the implicit message in the unanswered question. We also note that immediately after the objection was sustained, Smith was asked:

Nevertheless, Mr. Smith, your addiction for drugs caused you to do things you probably wouldn't do if you weren't addicted, isn't that correct?

to which Smith responded, "that's correct."

■ Failing to see any harm whatsoever to the defendant in this matter, we are unable to say that there was an abuse of discretion in the trial court's sustaining of the objection.

### B

The defense further brought out on cross-examination that Smith earlier in the year had testified in the same court against some individuals by the name of Bell and Vaughn in other cases. The record then reflects the following:

Q. And Mr. Vaughn, you testified that you bought some narcotics from him in this very Courtroom, didn't you?

A. Yes.

THE COURT: The Court will sustain an objection to any further testimony in regard to the other case except for the fact that he did testify. We will not go into circumstances of the other cases because it's irrelevant as far as this case is concerned.

■ Here the defendant argues that he should have been permitted to show that Smith had testified in another narcotics case against two individuals and that they had been acquitted despite his testimony. He further argues that the trial judge by sua sponte limiting any further questioning became an advocate for the Government, and that there could be no suggestion "that the two or three necessary questions to establish the fact that in a similar case the jury did not believe the informer would unnecessarily delay the trial." We, initially, cannot accept the underlying premise of the defendant that the fact that another jury did not believe Smith could be so simply established. Any observer of criminal trials is aware that sometimes convictions follow the flimsiest of evidence and, conversely, acquittals are the sequel to overwhelming evidence of guilt. To pinpoint that the cause of the acquittal in the other case was because of disbelief of Smith, even if he were the only witness, would have called for a collateral review in depth of the other trial, and even then the answer would probably have been conjectural. Even if the answer could have been adduced beyond doubt, the testimony would not have been proper. The issue was whether Smith was

credible in the eyes of the present jury, not whether twelve other persons believed or disbelieved him. We need not list the extremes to which the present contention would carry us if logically pursued. A trial judge does not become an advocate in litigation by stopping on his own motion, whether on direct or cross-examination, an improper line of inquiry.

■ During Agent Hogue's direct testimony concerning his conversation with the defendant at a service station on November 25, 1974, Hogue testified that Wright had told Smith and him that he, Wright, had been in some sort of a fight and had received several bruises and cuts. "He further told [Smith] and myself that if he had had his gun in his car—." At this point the defense objected and moved to strike the testimony. In a bench conference it developed that the Government expected Hogue to testify that Wright had said that if he had had a gun the results would have been different. The court sustained the objection, pointing out that insofar as the character of the witness was concerned, the determinative factor was reputation for truth and veracity rather than specific incidents. The prosecution indicated that if the defendant should later attempt to show excellent character, the Government would return to the challenged evidence. The court instructed the jury to disregard the testimony.

Subsequently during Wright's direct examination, he related details about the fight in which he had received bruises. On cross-examination in response to a general question about the November conversation, Wright added "[t]here was an incident or a point made by Agent Hogue about if I had my gun—." The gun testimony had, of course, been stricken and the jury instructed to disregard it. Thereupon the prosecution pursued the matter without objection. Wright denied that he had told Hogue and Smith that had he had his gun the results would have been different. Elsewhere in his testimony, Wright had testified as to his own work and educational background and as to his church and social work. He called as character witnesses his minister, a history professor, and the executive director of a Boys Club. Their testimony without detailed recitation did go beyond, although ordinarily without objection, the strict confines of reputation in the community for truth and veracity. The professor observed that he was particularly interested in Wright "because he was a young man that had great potential and I particularly cultivate five or six which I believe are outstanding young men and women each year, so I cultivated Mr. Wright."

The prosecution recalled Agent Hogue for rebuttal and over objection he testified as to the November conversation relating to the gun matter, i. e., that Wright had said that if he had had a gun in his car that it might have been a different story. The testimony then continued with regard to the conversation later the same November day at the Wright residence, part of which related to the effort to get some heroin that evening, but which concluded, "He further stated to myself and [Smith] that anyone that messed with him would get hurt and that he could pay someone to take care of anyone that messed with him." Trial counsel indicated he might call Wright for surrebuttal; however, he did not do so.

The defendant, relying on *United States v. Park*, 525 F.2d 1279 (5th Cir. 1976), and cases cited therein, argues that even if the prosecution is entitled to rebut character evidence that reputation is bad, proof of specific acts of misconduct is not admissible. This would appear to have been the rule of general application. Rule 608(b) of the Federal Rules of Evidence has changed the situation somewhat. That rule which was in effect at the time of the trial reads in pertinent part as follows:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning

his character for truthfulness or untruthfulness . . . .

Cf. *United States v. Senak*, 527 F.2d 129, 145 (7th Cir. 1975), *cert. denied*, 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758 (1976).

In the present case, the defendant places reliance upon Rule 608(b) because the testimony he challenges was not on cross-examination of himself but, he contends, was specific instances of misconduct testified to by another, *i. e.*, Agent Hogue. This approach, however, ignores the fact that the subject of the conversation was explored on his own direct testimony and the matter of the gun was brought in the case again by his own volunteered doing on cross-examination. Having denied that any such conversation took place, he cannot now complain that testimony reflecting upon his truthfulness was admitted on rebuttal.

We have more difficulty, however, with the matter of the testimony by Hogue concerning the statement at the residence that anyone who messed with him would get hurt. This was on the same day as the service station conversation but at a later time and at a different place. There had been no previous reference to it. It came late in the trial and the court had indicated that it would admit the conversation which occurred at the residence although there is no indication that the court was aware of the specifics or even of the general nature of this particular item of the conversation. The defendant did not move to strike this testimony on the basis that it was a new matter not encompassed in previous rulings, nor was he denied the opportunity of taking the stand to deny the substance of this part of the conversation on surrebuttal.

We are not unmindful of the Advisory Committee's admonition in its Note to the Rule that safeguards are necessary in the present situation because the possibilities of abuse are substantial. Nevertheless, this reported conversation was not an act of misconduct testified to by some third party witness but was a statement of a litigant party; it was inconsistent with the specificity of testimony concerning the defendant's good deeds which did go beyond mere repu-

tation, was at most a corroborative extension of the import of the properly admitted gun remarks, and is probative upon Wright's truthfulness or untruthfulness inasmuch as he had previously testified that neither Hogue nor Smith had been at his home later in the evening. Under all of the above circumstances, the admission of this statement does not require reversal.

## II

### A

The remaining eight issues raised by the defendant concern the matter of instructions. Three of these involve instructions given by the court, and the remainder pertain to the refusal to give instructions tendered by the defense. As to the first category, the defendant complied with Rule 30, Fed.R.Crim.P., by "stating distinctly the matter to which he objects and the grounds of his objection," as to two of the court's instructions although the record is not clear that there was compliance with the time requirement of that Rule, to which matter we will advert further hereinafter. There was no objection stated as to the third court instruction challenged here, and the defendant relies upon plain error. The defendant tendered 17 instructions and claims reversible error here in the refusal of the court to give 5 of these. No specific objections were stated of record in the trial court with regard to these five. The Government's brief in this court is of minimal help in considering the challenges to the instructions referring, without citation of authority, to the fact that some of the instructions are standard instructions, and remarking that some were covered by other numbered instructions without analysis of the language.

Before we turn to consideration of the specific instructional matters challenged here, we deem it appropriate in our supervisory capacity to address problems that may be experienced in the instructions area by Indiana practitioners who only occasionally appear in federal court. These problems arise out of a difference of procedure be-

tween the state and the federal practice which until recently was twofold and which apparently still continues in one respect.

The matter of instructions to juries in civil cases in the state courts of Indiana is now covered in Trial Rule 51. This Rule was a part of a comprehensive revision and rewriting of trial rules which substantially are based upon federal rules and which became effective on January 1, 1970. For some years prior to that date, the matter of instructions had been covered by rules promulgated by the Supreme Court of Indiana, which rules pertaining to procedural matters superseded statutory provisions. *See* Burns Ann.Stat. § 2–2008. The matter of instructions prior to the 1970 rules was contained in Rule 1–7 which in pertinent part read as follows:

> The court shall indicate on all instructions, in advance of the argument, those that are to be given and those refused. After the court has indicated the instructions to be given, each party shall have a reasonable opportunity to examine such instructions and to state his specific objections to each, out of the presence of the jury and before argument, or specific written objections to each instruction may be submitted to the court before argument. No error with respect to the giving of instructions shall be available as a cause for new trial or on appeal, except upon the specific objections made as above required.

Rule 1–7 requires specific objections to be made before argument and does not purport to require a further statement of objections following the giving of instructions to the jury. Also, Rule 1–7 by its terms requires only objections to those instructions which were to be given and not as to those tendered but refused. In *Gilmore v. State,* 229 Ind. 359, 98 N.E.2d 677 (1951), the appellant asserted error in the refusal to give requested instructions. The state argued that there was a waiver because the appellant had made no specific objections to the refusal of the court to give the instructions. The Indiana Supreme Court giving

effect to the plain language of the rule stated:

> Rule 1–7 does not require the party requesting any instruction which has been refused to make a specific objection to the ruling of the court. The instruction speaks for itself, and if under the law and facts involved it should have been given, the record at this stage preserves the error. [98 N.E.2d at 681.]

The Court further approved language of an earlier Indiana Appellate Court decision to the effect that the action of the trial court in refusing a properly tendered instruction automatically furnishes the tendering party with an exception without the making of any objection thereto. *Id.* The Court, however, in affirming in *Gilmore* indicated that the lack of specific objection at the trial level did not carry over at the appellate level where the reviewing court "is entitled to have presented to it in more than a summary fashion the reasons why the action of the trial court has prejudiced the appellant." *Id.*

The federal rules, however, differ. Rule 51, Fed.R.Civ.P., provides in pertinent part as follows:

> No party may assign as error the giving or *the failure to give* an instruction unless he objects thereto *before the jury retires* to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. [Emphasis added.]

Rule 30, Fed.R.Crim.P., is in slightly different language but is of the same general purport:

> No party may assign as error any portion of the charge *or omission* therefrom unless he objects thereto *before the jury retires* to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. [Emphasis added.]

Federal cases make it clear, if it needed any clarification, that the failure of the trial court in a civil case to give requested charges must be properly objected to before it may be made the basis of reversal. *Stueber v. Admiral Corporation,*

171 F.2d 777, 780 (7th Cir. 1949), *cert. denied,* 336 U.S. 961, 69 S.Ct. 891, 93 L.Ed. 1113. The result is the same under the "omission" standard of Rule 30, Fed.R. Crim.P. *Tomley v. United States,* 250 F.2d 549, 550–51 (5th Cir. 1958); *Maxfield v. United States,* 360 F.2d 97, 103 (10th Cir. 1966), *cert. denied,* 385 U.S. 830, 87 S.Ct. 67, 17 L.Ed.2d 66; *United States v. Phillips,* 522 F.2d 388, 391 (8th Cir. 1975). In case of conflict as to this procedural rule between the federal and state rules the former must prevail. *See McNamara v. Dionne,* 298 F.2d 352, 355 (2d Cir. 1962). Of course, all that we have stated as to the consequences of noncompliance with the rules requiring specific objections is subject to qualification if the failure to give an instruction constitutes plain error and this the appellate court may notice on its own motion. Rule 52(b), Fed.R.Crim.P.; *United States v. Perplies,* 165 F.2d 874 (7th Cir. 1948). We are not unmindful that in the criminal area where a person's liberty is involved there may well be a tendency for the reviewing court not woodenly to rely upon noncompliance but at least to examine the assignment of error "as if there had been a compliance with Rule 30." *Id.* at 876.

As we stated earlier herein, the present Indiana civil trial rules are substantially based upon the federal rules. In the 1968 proposed final draft of the Indiana Rules of Civil Procedure, the pertinent language of Indiana Trial Rule 51 was identical to that quoted above from Rule 51, Fed.R.Civ.P., with the exception of the use of the word "claim" rather than "assign." Indiana Trial Rule 51 as adopted, however, eliminated the words "the failure to give" leaving the matter of objection applicable only to the "giving of an instruction." It appears that Indiana law, therefore, is unchanged insofar as the necessity exists in a civil case to point out to the trial court the reasons for the incorrectness of refusal of an instruction.

As in the case with the federal rules, Indiana now also has a separate set of rules for criminal procedure. Criminal Rule 8(B) pertains to the matter of objecting to instructions "to be given" and is word-for-word identical to that portion of the old Rule 1–7 quoted above. Here, also, apparently no change has been effected with regard to the lack of necessity of objecting to the refusal to give requested instructions.

We have also referred hereinbefore to a second difference between the Indiana and the federal procedures on instructions. This is the necessity for a restatement of objections after the charge has been given to the jury. Inasmuch as Indiana Trial Rule 51 conforms to the Rule 51, Fed.R. Civ.P., in this respect, the basis for a differing procedure on the matter of restating objections would seem to have been eliminated in civil cases although apparently not in criminal cases, the present Rule 8(B) being keyed to a time before the argument.

With regard to the federal procedure, if we were considering the matter on an *a priori* basis we would confess to some difficulty in reading "before the jury retires" as meaning "immediately before the jury retires," or putting it in another frame of reference, "between the final arguments and the retirement of the jury for deliberation." Certainly for the purpose of eliminating the possibility of erroneous instructions, the trial court should have the advantage of all possible claims of error before telling the jury what the law is. On the other hand, if counsel has become aware of error in an instruction given or one omitted during the giving of the charge, he or she should bring it to the attention of the trial judge before the jury takes with it an incorrect concept of the law. Arguably, little purpose is served by a rehash or a parroting back of the same objections which the judge heard and rejected during the period when the jury was in an ordinary recess, a relatively calmer period than when the jurors have been instructed and are psychologically ready to proceed with the ultimate deliberations for which they have been assembled. Further, we are sympathetic to and understanding of the pressures under which the trial judge is laboring during these final stages of a trial.

The matter, however, cannot at this time be considered on an *a priori* basis. A conflict has developed on the subject among the circuits. The diverse views have been summarized in 2 C. Wright, Federal Practice and Procedure § 484, at 288–90 (1969):

It is the practice of many judges to inform counsel in a conference on the record at the close of the evidence of his action on their requests for instructions and of the charge he intends to give. Opportunity is given at that time for counsel to make appropriate objections. Thereafter, at the close of the instructions, counsel notes for the record that he adopts the objections made earlier, and makes in full any new objection he had not previously presented. This procedure has been praised by the Ninth Circuit, which said that it is

often used by district judges in their compliance with Rule 30. It saves time. It is generally acceptable to counsel and opportunity is given for further objections, in addition to those previously made and incorporated by reference. [The footnote cites *Las Vegas Merchant Plumbers Ass'n v. U. S.,* 210 F.2d 732, 744 (9th Cir. 1954), *cert. denied,* 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645.]

The Tenth Circuit, however, construing identical provisions of Civil Rule 51, has recently said:

We strongly condemn the practice followed in this case as turning upside down the meaning and purpose of Rule 51. * * * While we do not say that an objection may never be properly preserved to a charge in advance, we warn parties that there is a heavy burden upon them in such event to show that it was done with sufficient specificity and distinctness, and we caution district courts to be slow in tolerating such procedure. [The footnote cites *Dunn v. St. Louis-San Francisco Ry. Co.,* 370 F.2d 681, 683–84 (10th Cir. 1966).]

Many experienced attorneys and judges, who believe that the procedure described gives maximum warning to the court of points in dispute and is the most expeditious way of handling the matter, will think that the Ninth Circuit has the sounder insight on this point.

The author of this opinion is of the opinion that the procedure favored by the Ninth Circuit is the preferable of the two, but the law of this Circuit has been established otherwise. In *Hetzel v. Jewel Companies,* 457 F.2d 527, 535 (7th Cir. 1972), this court citing *Dunn* stated that "[o]bjections to the jury instructions must be made after the charge and before the jury begins its deliberation, therefore, so that the trial court may correct any errors in the instructions, including inadvertent ones which could not have been predicted prior to the charge." *See also Fey v. Walston & Co., Inc.,* 493 F.2d 1036, 1047 (7th Cir. 1974). It appears obvious that no one can quarrel with the advisability of bringing to the trial court's attention the matter of correcting errors which somehow have gotten into the charge as it is given despite the consideration thereof in advance of the giving thereof.

We have set forth the differences between the Indiana and the federal procedures principally so that those who primarily are engaged in state court practice will not mistakenly or inadvertently run afoul of different federal rules. Having done so, we now consider whether noncompliance in the present case precludes review of any of the claimed errors in instructions.

■ The transcript of the instructions conference reflects the following colloquy:

THE COURT: Do you want to make reference to any special Instructions that you tendered that the Court failed to give?

MR. GARELICK [Defense counsel]: I was just curious, your Honor, do I need to go through each Instruction and make a record on it?

THE COURT: I think if you wish to just offer them in total and say they state the law of the case and the Court, in failing to give them, has not properly applied the law or is not giving proper Instructions to the jury to include your matters, I think

that saves them. I haven't seen the Seventh Circuit refuse to take up an Instruction on account of that.

MR. GARELICK: I'll second that motion. If I could just incorporate that into the record and hereby tender my Instructions and note that the Court has seen fit not to give them and state that they are the law of the case and should be given, as opposed to the Court's Instructions.

MR. GOODLOE [Assistant United States Attorney]: Your Honor, may I ask that counsel be more specific in one area?

THE COURT: You may.

MR. GOODLOE: That would be in regard to the ones which were covered by some of the Court's Instructions and ones which were not covered at all which you think should be offered.

THE COURT: I don't think it's necessary under the circumstances, Mr. Goodloe. The Court, of course, has read—I might state for the record at this point that I have read and examined the Instructions as tendered by Counsel for Defendant, and that in a number of instances I find that most of them are covered and that any rejection is based on an examination in that I do not think it's applicable under the facts of the case or is not a proper statement of the law in that in some instances I think that Counsel has an opportunity to argue various—I mean, you can argue your concept of the matter within the framework of the Court's Instructions. I found very little opposition to your Instructions. In fact, I think practically all of them are covered. The Court differs with you in language in some respects and that is about it in a nutshell.

The good character, your number 14, for instance, the Court used its own. And we have already had the discussion about your 17 and the Court's ruling thereon. I was going to say I believe that concludes that, and after the Court finishes reading the Instructions I'll call you to the Bench and see if you have any further objections or exceptions at that time. Otherwise this conference shows in the transcript at that point. I will give you an opportunity to offer any additional ones at that point.

It is apparent that there was no compliance with the requirement that objections be stated as to the omissions from the court's charge insofar as omissions were represented by the defense-tendered instructions. Likewise, the record fails to reflect that there was any further statement of objections after the charge was given. The transcript does not show as the judge indicated it would that the instruction conference occurred after the charge was given as indeed it should not have inasmuch as the conference occurred before the charge was given. Incorporation by reference of the earlier objections was found not to be in compliance with the Rule in *Hetzel, supra.* Counsel for the defense under Rule 30, Fed.R.Crim.P., should not have had to express curiosity as to whether he needed to make specific objections to the refusal to give his tendered instructions, at least those which he considered to be important enough that their absence would jeopardize the defense. The court responded, however, by indicating that it would be sufficient just to utter some generalities which by no stretch of meaning could be considered to comply with the requirement of "stating distinctly the matter to which he objects and the grounds of his objection." The Assistant United States Attorney although not referring to Rule 30 did ask that defense counsel be more specific in one area, which should have been important to the defense unless it was merely tendering instructions in a perfunctory manner. The court, apparently being satisfied from its own examination of the tendered instructions that their refusal was proper, successfully terminated further pursuit of the matter by an apparently amenable defense counsel.

The district court, it must be observed, was generally correct in observing that it had not seen the Seventh Circuit refuse to take up instructions because of lack of detailed objection. We had occasion recently in a civil suit context to refer to the lenien-

cy displayed by this circuit "in adhering to the quite plain language of Rule 51." *Sadowski v. Bombardier Limited,* 539 F.2d 615, at 623 (7th Cir. 1976). In that case because of the silence of the record we declined to extend the circuit leniency to a consideration of the claimed error in not giving a contributory negligence instruction. We do not read the present record as showing any overbearing by the court of an intent or desire on the part of defense counsel to state his objections. On the other hand, the defendant in the case before us is confronted by a sentence of imprisonment, and we cannot disregard the impact that the court's assurances of the propriety of the procedure suggested by it would have upon counsel appearing before the court. This was at the very least "discouraging detailed objections," which was found to be a sufficient basis by this court in *American Nat. Bank & Trust Co. v. Aetna Insurance Co.,* 447 F.2d 680, 683 (7th Cir. 1971), to review both the instructions given and those refused. Notwithstanding that defense counsel here apparently had a low resistance to discouragement, we, albeit reluctantly, will review the tendered instructions challenged here as well as those given to which objections were made at the trial. In doing so, we once again refer to the words of *Phillips v. Kitt,* 110 U.S.App.D.C. 186, 290 F.2d 377, 378 (1961), that counsel "was under the duty to object and, even at the risk of incurring the displeasure of the trial court, to insist upon his objection"; and we decline to predict that counsel may continue safely to rely upon appellate leniency in disregarding the failure to make a proper record in the trial court. The matter of making a proper record, it scarcely needs to be said, is not merely a matter of purposeless formalism; here if the tendered instructions should have been given because of their essentiality for the proper understanding of the law by the jury, the judge should have been made aware of why counsel thought they were indispensable and should not have needed to rely only upon his own examination amidst the diverse pressures existent during the closing phases of a trial.

## B

Wright first objects to the giving of Instruction No. 20. This instruction was the second paragraph of the standard (so-called) LaBuy instruction, section 6.09, 33 F.R.D. 581, with the addition of the further sentence, "The defendant's testimony is to be judged in the same way as that of any other witness." The objection made at trial was that the instruction called special attention to the testimony of the defendant and his vital interest in the outcome and that the Government also had a vital interest in the outcome. We query whether the interest of the Government or of Agent Hogue is comparable to that of the defendant.

More than 80 years ago, the United States Supreme Court observed that "[t]he fact that he is a defendant does not condemn him as unworthy of belief, but at the same time it creates an interest greater than that of any other witness, and to that extent affects the question of credibility. It is, therefore, a matter properly to be suggested by the court to the jury." *Reagan v. United States,* 157 U.S. 301, 305, 15 S.Ct. 610, 611, 39 L.Ed. 709 (1895). This court recently considered a challenge to the standard LaBuy instruction and held it was not error to give an instruction pointing separately to the defendant's interest in the outcome. The court held that while arguably the interest of the defendant might be treated with that of other witnesses rather than separately, it was not persuaded that the instruction was prejudicial. *United States v. Crovedi,* 467 F.2d 1032, 1035–36 (7th Cir. 1972), *cert. denied,* 410 U.S. 990, 93 S.Ct. 1510, 36 L.Ed.2d 189 (1973). Interestingly, in that case, the defendants asked for an instruction that a defendant who wishes to testify is a competent witness, and his testimony is to be judged the same way as that of any other witness. Both of these elements were included in No. 20 in the case before us, and, as indicated hereinbefore, the second element was added by the district court to LaBuy 6.09.

In this court, the defendant also argues that there were three other general instruc-

tions referring to the weighing of the interest of witnesses generally. This duplication, however, was not called to the attention of the trial court and, as we have said, authority supports reference to the special interest of the defendant if he becomes a witness.

■ Wright next objects to the giving of Instruction No. 24, which reads as follows:

During this trial the jury has heard the testimony of an expert witness. Such evidence is admissible where the subject matter involved requires special study, training or skill not within the realm of the ordinary experience of mankind, and the witness is qualified to give an expert opinion.

The defendant at trial objected that the instruction did not go far enough in that it did not indicate that the weight to be given to the testimony of an expert was no different than that to be given to any other witness and that this instruction mandated the jury to believe the witness once they found he was an expert. The instruction given was the first paragraph of LaBuy section 6.16, 33 F.R.D. 595. The aspects in which the defendant thought the instruction was incomplete are found to some extent in the second paragraph of LaBuy 6.16, which paragraph the court for some reason did not include in its instructions. We, however, are only looking at what the jury was told and that dealt with admissibility. We utterly fail to find any mandatory aspects requiring the jury to believe the Government's expert witness in this innocuous instruction. Further, we note that the expert testimony pertained to an identification of exhibits as containing heroin. The defendant cross-examined the expert chemist as to certain tests he had not administered, but there was no evidence disputing that the material was indeed heroin and the objection is reduced to a matter of gamesmanship. Also, contrary to the objection in the trial court, the admissibility of expert testimony as the defendant concedes here is a matter peculiarly within the sound discretion of the trial judge. *United States v.*

*Alker,* 260 F.2d 135, 155 (3d Cir. 1958). We find no support for the defendant's position in his citation of *United States v. Holland,* 526 F.2d 284 (5th Cir. 1976).

Finally, insofar as given instructions are concerned, the defendant objects to Instruction No. 12. This instruction consists of three paragraphs and points out the presumption of innocence and the burden of the Government to prove the defendant guilty beyond a reasonable doubt. The instruction consisted of LaBuy, sections 6.01–1, 6.01–2, and 6.01–3, 33 F.R.D. 567. In this court, objection was lodged against the following portion only which is in 6.01–3:

A reasonable doubt means a doubt that is based on reason and must be substantial rather than speculative. It must be sufficient to cause a reasonably prudent person to hesitate to act in the more important affairs of his life.

The defendant did not object to this instruction in the trial court and necessarily here relies upon plain error. This court has had this or similar instructions before it and has found objectionable the equation of "reasonable doubt" with "substantial doubt." *United States v. Bridges,* 499 F.2d 179, 186 (7th Cir. 1974), *cert. denied,* 419 U.S. 1010, 95 S.Ct. 330, 42 L.Ed.2d 284. We note at the outset that this court specifically mentioned in that case that the challenged portion of the instruction, contrary to the Government's implication, was not approved in the LaBuy instructions. Here the instruction given was verbatim from LaBuy. The challenged portion of the instruction as given here in its first sentence makes it clear that the doubt must be substantial rather than speculative and then in its second sentence further limits the matter by the requirement that the doubt must be one sufficient to cause a reasonably prudent person to hesitate in the more important affairs of his life.

The challenged portion of the instruction has been addressed in at least four other decisions of this court. In *United States v. Lawson,* 507 F.2d 433 (7th Cir. 1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975), the Government had

tendered the LaBuy 6.01–3 which the trial court had declined to give. The trial court as a matter of fact refused to give any instruction at all on reasonable doubt, which was the issue before this court. In dictum in *Lawson*, we indicated that the instruction coming from acceptable authority we would have no difficulty in saying the subject had been adequately covered. We held in *Lawson*, with no judge in active service asking that the matter be reheard *en banc*, that because of the difficulties of arriving at an acceptable definition of "beyond a reasonable doubt" the refusal to give an instruction at all would not be ground for reversal.

In *United States v. Shaffner*, 524 F.2d 1021 (7th Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976), an appeal from a conviction in a trial over which the same judge presided as was involved in the present case, the instruction given included a fourth paragraph containing a questionable reference to the fact that if it were necessary to prove the guilt beyond all possible doubt few persons, however guilty they might be, would be convicted. As we read *Shaffner*, the court's questioning of the instruction and its *suggestion* that the instruction not be given in future cases was primarily directed at the fourth paragraph. In n. 2, at 1023, the court in *Shaffner* after setting forth the complete instruction given, stated "[w]e approve of this form of the instruction except for the last [fourth] paragraph." In *Shaffner*, as opposed to the present case, the defendant had objected in the trial court to giving of the instruction. Further, in *Shaffner* this court refused to reverse upon consideration of the instruction as a whole as not being prejudicially erroneous. The colloquy at the instructions conference in the present case reflects that Judge Noland was aware of the decision in *Shaffner*, it having been decided about a month and a half prior to the trial in the instant case and, as indicated, he having been the trial judge in the *Shaffner* case. The prosecuting attorney had indicated with regard to Instruction No. 20 that he would like some language to the effect that the jury did not have to believe implausible explanations of a defendant with regard to a crime charged. The judge referring to *Shaffner* said that this court had indicated that the statement that proof of guilt must be beyond all possible doubt should not be included; that while he thought it was appropriate, the Seventh Circuit did not agree. The fourth paragraph referred to in *Shaffner* was eliminated from the instruction given by Judge Noland.

This court again reviewed the challenged portion of the LaBuy instruction less than two weeks before the present trial began. *United States v. Gratton*, 525 F.2d 1161 (7th Cir. 1975). There is no indication in the present record of any awareness of that decision. After noting the history of the instruction in this court and that one other circuit had held that in the absence of a Rule 30 objection, an instruction defining reasonable doubt as substantial doubt was not plain error, this court in *Gratton* reached the same conclusion. *Id.* at 1162.

Prior authority was again reviewed by this court in *United States v. Crouch*, 528 F.2d 625 (7th Cir. 1976). In that case the objection at the trial court level particularly focused on the equating of reasonable doubt with substantial doubt. The court held, although recognizing the objectionable nature of the particular portion of the instruction, that it was not prepared to say, in light of the instruction considered as a whole, that reversible error was committed. The opinion, however, also stated in a footnote that if this court's decision in *Gratton* had been available for the trial court, "it would be necessary to exercise our supervisory power and decide otherwise." *Id.* at 631 n. 2. The last statement, of course, must be read in the *Crouch* context in which an objection had been stated distinctly. In the case before us, we agree with and follow *Gratton* that the giving of the instruction under the circumstances here does not require reversal as plain error. We also observe, however, that the message to the district courts of this circuit having been stated in *Crouch* in January 1976, and having been repeated here,

should now be clear and that a district court giving a reasonable doubt instruction containing the challenged equation notwithstanding a Rule 30 challenge can reasonably expect a reversal. We would assume further that district courts in view of the expressed dissatisfaction by this court with the language would sua sponte eliminate the phrase from their set of standard instructions even in the absence of a Rule 30 objection.

### C

We have reviewed in the context of the evidence and the total charge given by the court the five instructions tendered and refused which the defendant now asserts requires reversal. We are satisfied upon the basis of this examination that the defendant was not deprived of a fair trial and that the failure to give these instructions did not prejudice his case. We were not unmindful during the course of the examination of the frequently stated principle that a party is entitled to instructions pertaining to his theory of the case. Only three of the instructions, all concerned with the same subject, merit more than passing reference.

All three of the instructions in question were directed at the testimony of the informer although No. 10 was phrased with reference to any witness possessing attributes of self-interest or attitude which might prompt testimony unfavorable to the defendant. This instruction was adequately covered by three general instructions given by the court in connection with the evaluation of the credibility of witnesses. That the precise language tendered by the defendant was not used is immaterial as the trial judge has large discretion in fashioning the exact language and is not held to a hard and fast formula. *United States v. Rajewski*, 526 F.2d 149, 160–61 (7th Cir. 1975). This is nothing more than emphasizing the importance of the substance of what is told to the jury rather than the form.

The other two of the three tendered informer-related instructions are jury-must-view-with-great-caution instructions and essentially are duplicative with one being keyed to the informer who provides evidence for immunity or other personal advantage and the other being directed at the addict-informer.[1] These instructions have some of the meaning of LaBuy's instruction pertaining to informer's testimony, section 6.08, 33 F.R.D. 579–80; however, both go well beyond 6.08 in emphasizing the unreliability of an informer's testimony. Balancing the interests of the individual defendant with that of the public welfare, we do not conceive that the jury should be in effect told that it should totally disbelieve an informer or an addict-informer.

In *Rajewski*, we pointed out that many of the cases dealing with this type of instruction were those in which an accomplice or an informer instruction had been refused completely. 526 F.2d at 160. That is not the situation in the case before us. Here the district court clearly told the jury that the testimony of an informer who acts for reasons of personal profit or to gain lenient treatment "does not stand on the same footing as the testimony of an ordinary witness." This, of course, was subject in the minds of the jurors by way of contrast with the court's Instruction No. 20 in which the jury was told that despite the defendant's vital interest in the outcome his testimony "was to be judged in the same way as that of any other witness." Further, here the court instructed the jury that it "must determine whether the informer's testimony has been affected by interest or prejudice against the defendant."

The defendant in this court relies upon *United States v. Kinnard*, 150 U.S.App.D.C. 386, 465 F.2d 566 (1972), for its position that the court should have specifically referred

---

1. We note that included in the latter of these two instructions was a reference to an addict informer facing the immediate threat of incarceration. For whatever it is worth, this would seem to have little application in the present case because at the time of the trial, the informer witness was serving a 10 to 25 year term in a state prison.

to the untrustworthiness of and the necessity for scrutinizing "with great caution" the informer-addict's testimony. We have some difficulty in determining the exact scope of guidance provided by *Kinnard.* In that per curiam decision there were three separate opinions, one of which dissented from the reversal and the other two of which did not agree upon the circumstances necessitating a special cautionary instruction on the addict-informer's testimony. We are unable to discern that the views expressed by Chief Judge Bazelon have become firm and fixed law. Again, we are not speaking of the case where no cautionary instruction at all is given. In *Kinnard,* as pointed out in *United States v. Gregorio,* 497 F.2d 1253, 1262 (4th Cir. 1974), *cert. denied,* 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298, the defendant had erroneously been foreclosed from establishing addiction, which, it would seem, might have not necessitated reaching the matter of the instruction. *Gregorio* also points out that the cautionary instruction when given should not in effect render the witness incompetent to testify. In *United States v. Lee,* 165 U.S. App.D.C. 50, 506 F.2d 111 (1974), *cert. denied,* 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975), the majority opinion was written by Judge Leventhal, who had concurred in the *Kinnard* result but who had referred to corroboration or lack of corroboration as an element in considering the necessity of the addict-informer instruction. In *Lee,* after the preparation of a dissent by Chief Judge Bazelon, Judge Leventhal wrote that under the standards established in *Kinnard* the corroboration of her testimony obviated the requirement of an informer instruction. *Id.* at 125. Chief Judge Bazelon disagreed and in connection with a petition for rehearing observed that the addition by Judge Leventhal for the majority "purports . . . to obviate the need for the addict-informant instruction, thus resolving the conflicts between the various opinions in" *Kinnard. Id.* at 130. We have perhaps said enough to indicate why we find less than clear guidelines for application in the present case where an informer instruction was given. We fur-

ther note that although it came from a Government agent there was complete corroboration of the crime charged in the present case even though some of the testimony of the informant as to earlier events was not so corroborated.

In sum, we are satisfied that the instruction given by the court, although it could have been more wide-ranging in its discussion of the subject without prejudice to the Government, was sufficient for the purposes of a fair trial and that the failure to give the requested instructions does not require reversal.

 With regard to the remaining two instructions which the defendant here contends should have been given, one would have instructed the jury that no additional weight should be given to the testimony of law enforcement officers because of that status and that the defendant should not be convicted merely to serve as an example by way of deterrence to others. As to the first, the defendant concedes lack of supportive authority for giving it and does not claim it should have been given on its own merits. He argues, however, that it was needed here because of the special attention given to the defendant's testimony by the court's Instruction No. 20. As we have indicated, there is authority for that instruction. We consider that the jury was otherwise adequately instructed in weighing the testimony of witnesses including law enforcement officers. As to the deterrence instruction, which the defense argues was necessary because of the public alarm about drug abuse and its concern with "law and order," it does appear to us that if this instruction had been tendered by the Government and given by the court, it could have been claimed that it brought the matter of deterrence to the attention of the jury and was therefore harmful to the defendant. The judge properly refused to embark into this collateral jurisprudential area.

In accordance with this opinion, and for the reasons set out therein, the judgment of the district court is

Affirmed.