COMMONWEALTH *vs.* HERBERT S. ANDREWS, JR. August 15, 1980. The defendant appeals from his conviction on an indictment charging armed robbery. An earlier trial on the same indictment ended in a mistrial. We affirm.

1. It was well within the trial judge's broad discretion "to declare a mistrial when he consider[ed] the jury deadlocked." *Arizona* v. *Washington*, 434 U.S. 497, 510 & n.27 (1978). See also *Mills* v. *Tinsley*, 314 F.2d 311, 313-314 (10th Cir.), cert. denied, 374 U.S. 847 (1963). Such decisions are "accorded great deference by a reviewing court." *Arizona* v. *Washington, supra* at 510.

At the first trial the jury received the case at approximately 12:15 P.M. After deliberating that afternoon, they were sequestered overnight. At about 10:36 the next morning the judge gave the *Tuey* charge as modified by *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-103 (1973).

At approximately 12:20 P.M. the judge received two communications from the jury. One indicated that "due to a lacking piece of evidence, we continue to believe ourselves a hung jury. We have thoroughly discussed this and feel we will not change." Contrast *United States* v. *Lansdown,* 460 F.2d 164, 166-170 (4th Cir. 1972). The other dealt with whether marihuana had been found on the person of the defendant. As to the latter, the judge informed the jury that it was their memory that controlled. As to the former, we think that the judge properly viewed it as an indication that the jury were genuinely deadlocked and wished to be excused. This is apparent from his statement that "relating to [the] hung jury [matter], I will give you one half hour, and then I will act on this particular request of yours." Compare *United States* v. *Taylor,* 513 F.2d 70, 72 (5th Cir. 1975), with *Goff* v. *United States,* 446 F.2d 623, 626 (10th Cir. 1971). About forty minutes later he recalled the jury, declared a mistrial and discharged them. We are unable to say in these circumstances that the judge abused his discretion. *Arizona* v. *Washington, supra* at 510 n.28. See *Thames* v. *Commonwealth,* 365 Mass. 477, 479 (1974). A "mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict [has been] long considered the classic basis for a proper mistrial." *Arizona* v. *Washington, supra* at 509.

2. The defendant's contentions arising from the second trial are without merit.

(a) The defendant claims that in closing argument the prosecutor misstated the role of the jury and that the misstatement was inflammatory and misguided the jurors as to their role. The prosecutor stated that the jury process was "designed to get a cross-section of the community, who speaks for the community, who in fact decides what kind of community we live in." The comment was better left unsaid; however, we do not think it was so inflammatory or prejudicial as to require reversal, especially in light of the judge's charge. See *Commonwealth* v. *Smith,* 342 Mass. 180, 187-188 (1961).

(b) The defendant claims that the judge's instructions on the concept of proof beyond a reasonable doubt were prejudicial and constitutionally deficient. We disagree.

The language utilized by the judge in his instructions on the reasonable doubt standard is derived from *Commonwealth* v. *Madeiros,* 255 Mass. 304, 307-308 (1926). Although this language was held to constitute error in *Bumpus* v. *Gunter,* 452 F.Supp. 1060, 1063-1064 (D. Mass. 1978), it was done so in the context of other prejudicial instructions on burden of proof. In *United States* v. *Shaffner,* 524 F.2d 1021, 1024 (7th Cir. 1975), cert. denied 424 U.S. 920 (1976), similar language was found to be "highly questionable." However, neither *Bumpus* nor *Shaffner* "suggests that *Madeiros*-like language is error per se or prejudicial per se." *Commonwealth* v. *Williams,* 378 Mass. 217, 234 (1979). Although the judge did not use the term "moral certainty" in defining reasonable

doubt, he did refer to "that degree of certainty which satisfies the minds, the judgment and consciences of the jury as reasonable ladies and gentlemen, and leaves in their minds a clear and settled conviction of guilt." Compare *Commonwealth* v. *Therrien*, 371 Mass. 203, 208-209 (1976), and cases cited. Here, as in *Williams*, when the charge is considered as a whole, "we cannot conclude that the judge's instructions could have caused the jury to convict on a lesser standard than proof beyond a reasonable doubt." *Id.* at 234-235. Compare *Commonwealth* v. *Seay*, 376 Mass. 735, 745-746 (1978).

(c) The judge did not charge that "the burden of proof never shifts to the defendant," as requested by the defendant. "The judge was not required to instruct the jury in the precise language requested by the defendant." *Commonwealth* v. *Harris*, 376 Mass. 201, 208 (1978). The judge adequately instructed the jury on the presumption of innocence and the Commonwealth's burden of proving guilt beyond a reasonable doubt.

(d) The defense witness testified that the defendant had had no knowledge of the robbery before or after it occurred and did not even know about it until the time of the arrest. Compare *Commonwealth* v. *Zukoski*, 370 Mass. 23, 25 (1976). There was, therefore, no evidence that would support an instruction on accessory after the fact. "The judge is not obliged to charge a jury concerning a lesser included offence if the evidence would not warrant a finding that the defendant was guilty of that offence." *Commonwealth* v. *McKay*, 363 Mass. 220, 228 (1973).

*Judgment affirmed.*

*Willie J. Davis* for the defendant.
*Rosemary Ford,* Assistant District Attorney, for the Commonwealth.