**Jennifer Lee ALLEN, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

No. 81SC367.

Supreme Court of Colorado,
En Banc.

March 14, 1983.

Rehearing Denied April 4, 1983.

J. Gregory Walta, Colorado State Public Defender, Barbara S. Blackman, Deputy State Public Defender, Denver, for petitioner.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., William Morris, John T. Hyland, Asst. Attys. Gen., Denver, for respondent.

Further, the jury was instructed that neither sympathy nor prejudice should influence its deliberations.

ERICKSON, Justice.

We granted certiorari to review *People v. Allen*, 636 P.2d 1329 (Colo.App.1981). We reverse the court of appeals and return the case to the court of appeals with directions to remand to the district court for a new trial.

The defendant, Jennifer Lee Allen, was charged, tried, and convicted of introducing contraband into the Colorado State Penitentiary. Section 18–8–203(1)(a), C.R.S.1973 (1978 Repl.Vol. 8). The correctional officers at the maximum security unit of the Colorado State Penitentiary discovered marijuana and hash oil in letters and packages addressed to the defendant's husband, Gary Allen, who was an inmate, and to Martin Aguerro, another inmate. At trial, the defendant admitted that she had mailed the drugs to the penitentiary but claimed that she acted under duress.

The duress defense was based upon events surrounding her husband's confinement. The defendant's husband testified that shortly after he was confined in the maximum security unit he was approached by inmates who demanded that he obtain drugs for them. Shortly after he refused to cooperate in obtaining drugs for two inmates, he was assaulted. While he was in his bunk he was stabbed in the back and stomach and was strangled with a guitar string until he was unconscious. Thereafter, he was confined to a hospital for approximately one week and was placed in protective custody for eleven months.

While Allen was in protective custody he received threatening notes from other inmates. When he returned to the general prison population, he agreed to help Martin Aguerro obtain drugs in exchange for protection. The defense of duress was supported by testimony that Gary Allen informed his wife of the threats and that she was in tears when she left the penitentiary after visiting her husband. She testified that she mailed the drugs to protect her husband from death.

After the jury instructions were given, the matter was submitted to the jury. The jury then deliberated from 11:30 a.m. until 9:45 p.m. At that time, the court advised counsel that it intended to bring the jury in and ask the foreman if there were any possibility that a verdict could be reached. The trial judge said that if the jury foreman responded that there were no chance of obtaining a verdict, the judge would probably allow the jury to deliberate another hour. He also told counsel that if the foreman indicated that the jury could reach a verdict, he would simply let them go back into the jury room. The prosecution objected to the court's plan. Defense counsel said that no objection would be made to an inquiry regarding whether the jury was close to a verdict.

When the jury returned to court, the following colloquy occurred:

THE COURT: "Mr. [Foreman], do you feel that there is any possibility that they jury can reach a verdict?"

[FOREMAN]: "I don't think so, your Honor."

THE COURT: "You have had this case roughly since 11:30 this morning. There was a great deal of time that goes into a trial and I would like for you to reach a verdict if you possibly can. *I'm going to give you roughly another hour to deliberate.* However, I don't want to keep you unduly long, however I don't want to make you stay here and deliberate if you feel that you can't reach a verdict. If it takes another hour do you think that would help you."

JUROR NUMBER 5: "Are we allowed to ask any questions?"

THE COURT: "No, the reason for that is if you ask questions then my interpretation of what may have been said or what may have been done in a particular instances would not be fair. I think, ladies and gentlemen, *I'll ask you to deliberate again until roughly ten o'clock. If you haven't reached a verdict at that time I'll bring you back in and declare a mistrial.* Thank you, ladies and gentlemen."

(Mistakes in original.) (Emphasis added.) The jury retired, deliberated fifteen min-

utes, and returned a verdict of guilty on all counts. The defense then filed a motion for a new trial based upon the court's "time-fuse"[1] instruction. The motion was denied.

 The sole issue before us is whether the giving of the "time-fuse" instruction constitutes plain error and requires reversal. We hold that it does.

On September 22, 1971, the Chief Justice of the Colorado Supreme Court issued a directive to all judges of courts of record concerning the "Allen" instruction which is also referred to as the "third degree" instruction. See Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); see generally United States v. Bailey, 468 F.2d 652 (5th Cir.1972); People v. Gainer, 19 Cal.3d 835, 566 P.2d 997, 139 Cal.Rptr. 861 (1977). The directive, which parallels Standard 15–4.4 of the American Bar Association Standards for Criminal Justice Relating to Trial by Jury, states:

"IT IS HEREBY ORDERED that the 'Allen' Instruction, otherwise known as the Third Degree Instruction, be no longer given to juries in trials conducted in this state. If it appears that a jury has been unable to agree, the trial court may in its discretion require the jury to continue its deliberations and may give an instruction which informs the jury that:

"1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement if it can be done without violence to individual judgment;

"2) Each juror must decide the case for himself, but only after impartial consideration with his fellow jurors;

"3) In the course of deliberation, a juror should not hesitate to re-examine his own views and change his opinion if convinced it is erroneous; and

"4) No juror should surrender his honest conviction as to the weight and effect of the acts solely because of the opinion of his fellow jurors or for the mere purpose of returning a verdict.

"A jury shall be discharged by the trial judge without having agreed upon a verdict if it appears to the trial judge that there is no reasonable probability of agreement."

See III American Bar Association Standards for Criminal Justice 15–4.4, Commentary Standard 15–4.4(b) (1978). We issued the directive to minimize the use of jury instructions with potentially coercive effects. See Taylor v. People, 176 Colo. 316, 490 P.2d 292 (1971); Lowe v. People, 175 Colo. 491, 488 P.2d 559 (1971).

The instruction given to the jury was not the classic Allen charge but was an instruction known as the "time-fuse" instruction. The instruction may have a coercive effect, like that of the Allen charge, because it orders the jury to end its deliberations with a verdict or have a mistrial declared. In this case, counsel was not advised by the court that the jury would be given such a short period to deliberate, and the court's arbitrary fifteen minute deadline may have prevented the jury from reaching a well-considered verdict. The potentially coercive effect of the instruction denied the defendant a fair trial.

The United States Court of Appeals for the Tenth Circuit has apparently adopted a per se ban on time deadlines for returning verdicts as an unconstitutional restriction upon the jury's traditional function in resolving the issue of guilt. Goff v. United States, 446 F.2d 623 (10th Cir.1971); Burroughs v. United States, 365 F.2d 431 (10th Cir.1966). Other jurisdictions have analyzed the coercive effect of the instruction on a case-by-case basis. See e.g., United States v. Chaney, 559 F.2d 1094 (7th Cir. 1977); United States v. Taylor, 513 F.2d 70 (5th Cir.) cert. denied, 423 U.S. 947, 96 S.Ct. 361, 46 L.Ed.2d 281 (1975). See also Commonwealth v. Andrews, 10 Mass.App. 866, 408 N.E.2d 662 (1980); State v. Mason, 588 S.W.2d 731 (Mo.Ct.App.1979); Higgins v.

---

1. The "time-fuse" instruction grants the jury a time limit to finish its deliberations, at the end of which the jury will be dismissed.

*State,* 493 P.2d 1121 (Okl.Cr.App.1972); *State v. Jones,* 292 N.C. 513, 234 S.E.2d 555 (1977); *State v. Souza,* R.I., 425 A.2d 893 (1981); *State v. Perry,* 131 Vt. 337, 306 A.2d 110 (1973).

In our view, the *per se* rule established by the Tenth Circuit in *Burroughs v. United States, supra,* is unnecessarily inflexible.[2] *State v. Souza, supra.* We believe that the better approach utilizes a case-by-case examination of the particular facts of each case where the instruction is given.

Other courts have also found the instruction potentially disruptive of a fair trial. In *People v. Hill,* 44 A.D.2d 813, 355 N.Y. S.2d 612 (1974), a ten minute limitation was declared to be coercive. Similarly, in *State v. Mason, supra,* a fifteen minute time limit was considered coercive. In this case, counsel was advised that the jury would be permitted to deliberate another hour before a mistrial was declared. The court's instruction actually granted the jury only fifteen minutes to end its deliberations on the penalty of a mistrial. Under the circumstances of this case, the coercive effect of the instruction denied the defendant a fair trial.

Accordingly, we reverse the court of appeals and return this case to the court of appeals with directions to remand to the district court for a new trial.

---

**2.** We disapprove, however, the practice of threatening a mistrial if a verdict is not returned by a specific time.