2014 CO 67

**Terrence Curtis GIBBONS, Petitioner**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**Supreme Court Case No. 11SC792**

Supreme Court of Colorado.

June 30, 2014

---

Attorneys for Petitioner: Douglas K. Wilson, Public Defender, James S. Hardy, Deputy Public Defender, Denver, Colorado.

Attorneys for Respondent: John W. Suthers, Attorney General, Christine C. Brady, Senior Assistant Attorney General, Denver, Colorado.

JUSTICE HOOD delivered the Opinion of the Court.

¶ 1 When a jury is deadlocked, the court may provide a "modified-*Allen*" instruction informing the jury that it should attempt to reach a unanimous verdict; that each juror should decide the case for himself or herself; that the jurors should not hesitate to reconsider their views; and that they should not surrender their honest convictions solely because of others' opinions or to return a verdict. The purpose of this instruction is to encourage jurors to reach a verdict without coercing them into doing so. *See Allen v. People*, 660 P.2d 896, 898 (Colo.1983).

¶ 2 In *People v. Raglin*, 21 P.3d 419 (Colo. App.2000), a division of the court of appeals announced an additional requirement: "In addition, the instruction *must* inform the jurors that if it appears to the trial court that a unanimous decision cannot be reached, they will be excused and a mistrial will be declared." *Id.* at 423 (emphasis added).

¶ 3 In this case, as well as two companion cases announced today,[1] we decide whether a modified-*Allen* instruction requires the trial court to inform the jury that a mistrial will be declared if it cannot reach a unanimous verdict. Here, the court of appeals rejected *Raglin*, instead adopting a per se rule prohibiting a trial court from informing the jury about the possibility of a mistrial. *See People v. Gibbons*, —— P.3d ——, ——, 2011 WL 4089964 (Colo.App. No. 09CA1184, Sept. 15, 2011). We agree with the *Gibbons* division that *Raglin*'s mistrial advisement requirement is inconsistent with our precedent, but we disapprove of its per se prohibition.

¶ 4 We hold that a trial court is not required to provide a mistrial advisement when giving a modified-*Allen* instruction. The trial court has discretion to instruct a deadlocked jury about the possibility of a mistrial when, considering the content of the instruction and the context in which it is given, the instruction will not have a coercive effect on the jury. The court should consider exercising its discretion in rare circumstances, for example when a jury has actually indicated a mistaken belief in indefinite deliberations.

## I. Facts and Procedural History

¶ 5 Terrence Gibbons was charged with theft by receiving and perjury for claiming ownership over a stolen jet ski and trailer and having signed temporary permits. At trial, his theory of defense was that he did not know the jet ski and trailer were stolen.

¶ 6 The prosecution presented its case on a Friday, and Gibbons rested without presenting evidence. The jury then began its deliberations Friday afternoon. At the end of the day, the jury requested to continue its deliberations on Monday.

¶ 7 On Monday morning, after deliberations had resumed, the trial court received a question from the jury: "What is the finding if all jurors do not reach a unanimous decision?"

¶ 8 Both parties agreed that the trial court should give the jury a modified-*Allen* instruction. The trial court brought the jury into the courtroom and asked about the "likelihood of progress towards a unanimous verdict." The court was "not interested in how you're deciding, just whether or not it is appropriate for me to have you continue to deliberate." The foreperson replied, "At this time, no. We're at a standstill." The court then gave the jury the modified-*Allen* instruction, which tracked the pattern instruction found in CJI–Crim. 38:14 (1983 & Supp. 1993).[2] The court also stated that it would

---

1. *Martin v. People*, 2014 CO 68, 329 P.3d 247; *Fain v. People*, 2014 CO 69, 329 P.3d 270.

2. The trial court instructed the jury as follows:

   I'm going to read you an additional instruction. I'm going to give you another opportunity to go back in the jury room. Then I'll talk with you again in about an hour.

   You are instructed, since it appears to the Court your deliberations have been somewhat lengthy, the Court wishes to suggest a few thoughts you should consider in your deliberations along with the evidence in the case and all the instructions previously given.

   It is your duty as jurors to consult with one another and deliberate with a view to reaching a verdict if you can do so without violence to individual judgment. Each of you must decide the case for yourself. Do so only after impartial consideration of the evidence with your fellow jurors.

   In the course of your deliberations, do not hesitate to re-examine your own views and

check with the jurors to evaluate whether they were able to make progress.

¶ 9 The court recessed. Less than ten minutes later, the court noted that the jury was "progressing a little bit," and, less than twenty minutes after that, the jury reached a verdict. It found Gibbons guilty on both counts.

¶ 10 On appeal, Gibbons argued that the trial court committed plain error by not instructing the jury, in response to its question, that a mistrial would be declared in the event of a deadlock, relying on *Raglin*. The court of appeals rejected Gibbons's argument and *Raglin*'s mistrial advisement requirement, instead adopting a per se rule prohibiting such advisements: "[A] trial court, in the event of jury deadlock, should not instruct the jurors that they will be excused and a mistrial declared if they cannot reach a unanimous verdict." *Gibbons,* —— P.3d at ——. Chief among its reasons was that such instructions are "inherently coercive." *Id.* —— P.3d at ——.

¶ 11 We granted certiorari in this case, as well as two companion cases announced today, to determine whether "Colorado's modified-*Allen* instruction requires a trial court to inform the jury that if it cannot reach a unanimous verdict then the jury will be dismissed and a mistrial will be declared." We conclude that it does not.

## II. Standard of Review

¶ 12 Trial courts have discretion to give a modified-*Allen* or other supplemental instruction to the jury. *See Allen,* 660 P.2d at 898. We accordingly review that decision for an abuse of discretion. *See id.; see also People v. Schwartz,* 678 P.2d 1000, 1012 (Colo.1984). But where, as here, the defendant has not requested a specific supplemental instruction (such as a mistrial advisement) or otherwise objected to the trial court's decision to give a modified-*Allen* instruction,

we review for plain error. *See People v. Miller,* 113 P.3d 743, 750 (Colo.2005). As the court of appeals has explained in the modified-*Allen* context, the point of such instructional objections is to give trial courts an opportunity to consider an alleged error " 'to prevent error from occurring' in the first place." *People v. McNeely,* 222 P.3d 370, 374–75 (Colo.App.2009) (quoting *People v. Stewart,* 55 P.3d 107, 120 (Colo.2002)).

## III. Analysis

¶ 13 *Raglin* announced a per se rule requiring the trial court to instruct the jury about the possibility of a mistrial, and the *Gibbons* division announced a per se rule prohibiting such instructions because they are inherently coercive. Here, neither party defends either rule. Instead, they agree that a trial court has discretion to instruct the jury about the possibility of a mistrial in certain circumstances. But they disagree about the circumstances under which a trial court can appropriately exercise that discretion. Gibbons argues that a trial court should exercise that discretion whenever the court's silence could act to coerce a deadlocked jury into reaching a verdict it mistakenly thought it had to reach. The People argue that a trial court should exercise that discretion only when a jury indicates a mistaken belief in never-ending deliberations.

¶ 14 As framed, the parties' disagreement centers on whether the trial court erred by failing to instruct the jury about the possibility of a mistrial. To resolve their disagreement, we discuss the propriety of *Raglin*'s mistrial advisement requirement and the *Gibbons* division's per se rule prohibiting such advisements. We begin by explaining the genesis of the modified-*Allen* instruction. We then examine *Raglin* 's mistrial advisement requirement. Finding no such requirement in our precedent, we overrule *Raglin*. Next, we consider whether mistrial advise-

change your opinion if convinced it is erroneous. Do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the purpose of returning a verdict. You are not partisans. You are judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

With that, ladies and gentlemen, I'm going to give you another opportunity to go back in the jury room. As I indicated, I'll see if you're able to make progress in a few minutes. Thank you.

ments are inherently coercive, conclude that they are not, and hold that a trial court has discretion to instruct the jury about the possibility of a mistrial in rare circumstances.

## A. The Modified–*Allen* Instruction

¶ 15 "The issue of how to instruct a jury which has reported itself deadlocked has had a long and somewhat controversial history." *ABA Standards for Criminal Justice: Discovery and Trial by Jury* 15–5.4, at 258 (3d ed. 1996). That history begins with *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), in which the Supreme Court found no error in a supplemental jury instruction stating that, if most jurors wanted to convict, then "a dissenting juror should consider whether his doubt was a reasonable one." *Id.* at 501, 17 S.Ct. 154. On the other hand, if most jurors wanted to acquit, then "the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority." *Id.*

¶ 16 The original *Allen* instruction had a "stormy career." *United States v. Silvern,* 484 F.2d 879, 880 (7th Cir.1973). It singled out for admonition only those jurors in the minority; it did not direct those in the majority to reconsider their views. *See Allen,* 164 U.S. at 501, 17 S.Ct. 154. In this way, the original *Allen* instruction put "unjustified pressure on the minority of jurors to surrender their honest convictions." *United States v. Seawell,* 583 F.2d 416, 418 (9th Cir.1978) (Hug, J., concurring). That is why, by the late–1970s, the original *Allen* instruction had been "disapproved by three circuits and 23 states"—including Colorado. *Id.* (footnotes omitted).

¶ 17 Colorado prohibited giving the original *Allen* instruction in 1971 through Chief Justice Directive No. 14: "IT IS HEREBY ORDERED that the 'Allen' Instruction … be no longer given to juries in trials conducted in this state." The directive provides a modified instruction designed to lessen the coercive effects of the original *Allen* instruction by instructing all jurors—not just those in the minority—"to consider the opinions of the others, regardless of which way the vote is leaning." *ABA Standards for Criminal Justice: Discovery and Trial by Jury* 15–5.4, at 260. It is composed of four numbered paragraphs informing jurors that: (1) they have a duty to consult with one another; (2) each juror must decide the case for himself or herself; (3) jurors should not hesitate to re-examine their views; and (4) they should not surrender their honest convictions solely because of others' opinions or to return a verdict. The directive's concluding paragraph states: "A jury shall be discharged by the trial judge without having agreed upon a verdict if it appears to the trial judge that there is no reasonable probability of agreement."

¶ 18 We approved of this "modified-*Allen*" instruction as non-coercive in our own "*Allen*" case, *Allen v. People,* 660 P.2d 896 (Colo. 1983). In *Allen,* the trial court asked a deadlocked jury whether it could reach a verdict, and the foreperson replied, "I don't think so." *Id.* at 897. The court then instructed the jury "to deliberate again [for about fifteen minutes]. If you haven't reached a verdict at that time I'll bring you back in and declare a mistrial." *Id.* The jury retired, deliberated for fifteen minutes, and returned a guilty verdict on all counts. *Id.* at 897–98.

¶ 19 We considered whether the trial court's fifteen-minute deadline—a so-called "time-fuse" instruction—was coercive. *Id.* at 898. We held that a time-fuse instruction may have a coercive effect "because it orders the jury to end its deliberations with a verdict or have a mistrial declared." *Id.* The trial court's instruction was coercive and denied the defendant a fair trial because its "arbitrary fifteen minute deadline may have prevented the jury from reaching a well-considered verdict." *Id.* But we refused to adopt a per se ban on time deadlines, instead opting for a case-by-case approach, though we made clear that we "disapprove, however, the practice of threatening a mistrial if a verdict is not returned by a specific time." *Id.* at 899 & n. 2.

■ ¶ 20 Thus, the interrelationship of the two *Allen* cases can be summarized as follows: the four-part modified-*Allen* instruction does not include a time-fuse admonition,

and Colorado's *Allen* decision discourages a trial court from adding one.

¶ 21 Years later, the court of appeals decided the case that spawned the mistrial advisement requirement and the issue for which we granted certiorari, *People v. Raglin*, 21 P.3d 419 (Colo.App.2000). Before addressing the issue on appeal, the *Raglin* division outlined the four components of a modified-*Allen* instruction, but it then announced another component, the so-called mistrial advisement requirement: "In addition, the instruction *must* inform the jurors that if it appears to the trial court that a unanimous decision cannot be reached, they will be excused and a mistrial will be declared." *Id.* at 423 (emphasis added). For this proposition, *Raglin* cited *Schwartz*, 678 P.2d 1000, which, like the Colorado *Allen* case, quoted Chief Justice Directive No. 14 in its entirety, including the concluding paragraph, a portion of which the *Schwartz* court emphasized: "A jury shall be discharged ... *if it appears to the trial judge that there is no reasonable probability of agreement." Id.* at 1012 (emphasis in original).

¶ 22 Following *Raglin*, another division reiterated the mistrial advisement requirement. *People v. Grace*, 55 P.3d 165, 170 (Colo.App. 2001). And another division, although it questioned the genesis of *Raglin*'s mistrial advisement requirement, nevertheless "assumed" that a trial court should give a mistrial advisement "upon request," effectively coining a new rule. *McNeely*, 222 P.3d at 375. Although neither party defends *Raglin*, we address whether its mistrial advisement requirement is consistent with our precedent.

### B. The *Raglin* Mistrial Advisement Requirement Is Inconsistent with Our Precedent

■ ¶ 23 As the court of appeals noted in *McNeely*, the "genesis of requiring specific reference to the possibility of a mistrial is unclear." *Id.* It aptly characterized *Raglin*'s mistrial advisement requirement as paradoxical, given that "the fatal flaw with the instruction actually given in the Colorado *Allen* case was that it *did* expressly inform jurors a mistrial would be declared if they could not reach unanimity." *Id.* (emphasis in original).

¶ 24 Here, the court of appeals rejected *Raglin*, reasoning that its reliance on *Schwartz* was misplaced. *Schwartz's* recitation of Chief Justice Directive No. 14, including the concluding paragraph explaining the trial court's discretion to discharge a jury without a verdict, was not intended to adopt a mistrial advisement requirement: "In our view, the four numbered paragraphs are the four components of a modified-*Allen* instruction that a trial court in its discretion may give; and the concluding paragraph informs the court when it may discharge the jury." *Gibbons*, —— P.3d at ——. The court also echoed the *McNeely* division's concern that requiring a mistrial advisement runs counter to our reasoning in *Allen*, *see id.* —— P.3d at ——, where we disapproved "the practice of threatening a mistrial if a verdict is not returned by a specific time," *Allen*, 660 P.2d at 899 n. 2.

¶ 25 Like the court of appeals, we do not read *Schwartz* to state or to imply a mistrial advisement requirement. Nor can we square *Raglin* with *Allen's* concern that time-fuse instructions may be coercive because they order "the jury to end its deliberations with a verdict or have a mistrial declared." *See id.* at 898. It would be anomalous to disapprove of instructions threatening a mistrial while requiring trial courts to instruct juries about that very possibility. Perhaps, as the People suggest, *Raglin*'s mistrial advisement requirement was simply an "inadvertent error." That may be true, but it does not change *Raglin*'s status as a breeding ground for confusion. Therefore, it is time to correct *Raglin*'s error.

¶ 26 We agree with the court of appeals that *Raglin*'s mistrial advisement is contrary to our precedent, and we expressly overrule it. By extension, we also overrule *Grace*, insofar as it sanctioned *Raglin*'s mistrial advisement requirement, and *McNeely*, insofar as it "assumed" a trial court should give a mistrial advisement "upon request." Our precedent does not require trial courts to advise deadlocked juries about the possibility of a mistrial. To the contrary, our precedent cautions against the practice. *See Allen*, 660 P.2d at 899.

¶ 27 But the *Gibbons* division took the analysis "one step further." *Gibbons,* —— P.3d at ——. It concluded that a trial court, if the jury is deadlocked, "should not instruct the jurors that they will be excused and a mistrial declared if they cannot reach a unanimous verdict" because such instructions are "inherently coercive." *Id.* —— P.3d at ——, ——. The parties interpret this statement to adopt a per se rule prohibiting mistrial advisements. To the extent that it does, we address the propriety of this per se rule next.

## C. The *Gibbons* Per Se Rule Is Inconsistent with Our Precedent

¶ 28 Gibbons argues that the court of appeals' per se rule is inconsistent with the ad hoc approach we took in *Allen*: that the coercive effect of a supplemental instruction must be examined on a case-by-case basis. Gibbons also argues that the court of appeals' rule ignores the possibility that, in certain circumstances, failing to inform the jury about the possibility of a mistrial is itself coercive. The People agree, but only in the "unusual circumstance" when a jury indicates a mistaken belief in never-ending deliberations.

■ ¶ 29 *Allen* illustrates our preference for a case-by-case approach when evaluating the coercive effect of a supplemental jury instruction. In *Allen,* we refused to adopt a "per se ban on time deadlines for returning verdicts," finding such an approach "unnecessarily inflexible." *Allen,* 660 P.2d at 898–99. Instead, we favored an ad hoc inquiry. *Id.*

¶ 30 We did so because evaluating the coercive effect of a supplemental jury instruction—such as a time-fuse instruction or a mistrial advisement—will necessarily depend on the content of the instruction and the context in which it is given. *See id.* The instruction in *Allen* was coercive because the court imposed "an arbitrary fifteen minute deadline," effectively threatening a mistrial. *Id.* at 898 & 899 n. 2. This suggests that a trial court may inform the jury about the possibility of a mistrial but, to avoid coercion, must refrain from imposing arbitrary deadlines or using the specter of a mistrial to threaten jurors into returning a verdict. What matters is that " 'the circumstances under which the district court gives the instruction are not coercive, and the content of the charge is not prejudicial.' " *United States v. Hitt,* 473 F.3d 146, 153 (5th Cir. 2006) (quoting *United States v. McClatchy,* 249 F.3d 348, 359 (5th Cir.2001)).

■ ¶ 31 This approach comports with our cases affording trial courts discretion in this area. Trial courts have discretion to decide whether to give a modified-*Allen* instruction. *Schwartz,* 678 P.2d at 1012. They also have discretion to decide whether to declare a mistrial when a jury is deadlocked, sometimes without giving a modified-*Allen* instruction at all. *People v. Richardson,* 184 P.3d 755, 760 (Colo.2008); *Schwartz,* 678 P.2d at 1012 (affirming the trial court's decision to declare a mistrial after properly refusing to give the modified-*Allen* instruction to a deadlocked jury). Addressing the fluid dynamics associated with possible deadlock is a quintessential trial court responsibility. The trial judge has eyes and ears on the situation as it unfolds. To say that a trial court is prohibited from giving a mistrial advisement seems—to borrow a phrase from *Allen* —"unnecessarily inflexible."

■ ¶ 32 In evaluating how to use its discretion, the trial court should consider whether the jury has actually indicated that it believes indefinite deliberations are necessary. And contrary to *Raglin,* it is never required to exercise that discretion. Absent some affirmative indication from the jury that it harbors this concern, the trial court should not interfere with the jury's deliberative process. Common sense suggests that such cases will be rare: most jurors will not think that a trial judge has the power or wherewithal to keep them indefinitely captive in a deliberation room until they reach a verdict.

■ ¶ 33 We hold that a trial court is not required to provide a mistrial advisement when giving a modified-*Allen* instruction. The trial court has discretion to instruct a deadlocked jury about the possibility of a mistrial when, considering the content of the instruction and the context in which it is

given, the instruction will not have a coercive effect on the jury. The court should consider exercising its discretion in rare circumstances, for example when a jury has actually indicated a mistaken belief in indefinite deliberations.

## IV. Application

¶ 34 Gibbons argues that the trial court plainly erred by failing to instruct the jury about the possibility of a mistrial. In his view, the jury's question—"What is the finding if all jurors do not reach a unanimous decision?"—sought clarification from the court about the possibility of a mistrial and triggered a duty to respond with a mistrial advisement. The People question Gibbons's interpretation of the jury's question and, in any event, argue that the modified-*Allen* instruction dispelled any misapprehension on the jurors' part.

¶ 35 Neither party disputes that the instruction tracked the pattern instruction approved by the Colorado *Allen* case. *See Allen*, 660 P.2d at 898. Gibbons does argue that the trial court included an impermissible time-fuse component when it told the jury that it would "talk with [the jury] again in about an hour" and "check back . . . in a few minutes." In contrast to the instruction in *Allen*, however, the trial court's instruction here did not order "the jury to end its deliberations with a verdict or have a mistrial declared." *See id.* Rather, the trial court merely informed the jury of its intent to reassess whether deliberations were progressing toward a verdict—a reasonable instruction given the foreperson's statement that deliberations were at a "standstill." We perceive nothing coercive about the trial court's instruction.

¶ 36 Of course, Gibbons does not focus on what the instruction contained; he focuses on what the instruction omitted. But as our holding makes clear, a trial court is not required to give a mistrial advisement. Instead, it should consider exercising its discretion to do so in rare circumstances, for example when a jury has actually indicated a mistaken belief in indefinite deliberations. The trial court here could not have erred, let alone plainly erred. So for that reason alone, Gibbons's argument fails.

¶ 37 We conclude that the trial court did not err by failing to instruct the jury about the possibility of a mistrial.

## V. Conclusion

¶ 38 For the reasons stated, we affirm the judgment of the court of appeals.

JUSTICE COATS concurs in part and concurs in the judgment, and CHIEF JUSTICE RICE and JUSTICE EID join in the concurrence in part and concurrence in the judgment.

JUSTICE COATS, concurring in part and concurring in the judgment.

¶ 39 I agree fully with the majority's decision to overrule the court of appeals holding in *People v. Raglin*, 21 P.3d 419 (Colo.App. 2000), and to hold instead that an additional advisement concerning mistrial need not be included in a modified-*Allen* instruction. I do not concur, however, in the remainder of the majority opinion, advising as it does that "[a] trial court has discretion to instruct a deadlocked jury about the possibility of a mistrial when, considering the content of the instruction and the context in which it is given, the instruction will not have a coercive effect on the jury." Maj. op. ¶ 33. While I can appreciate the majority's reluctance to impose an absolute ban on notifying juries about the possibility of a mistrial, as the opinion below would apparently do, I believe the majority's opinion fails to articulate any principled basis for doing otherwise. More particularly, I fear the majority opinion is likely to create more uncertainty and fuel even more litigation over the decision to give or not to give an additional, mistrial advisement, by failing to make clear the sense in which it uses the term "discretion"; by offering precious little guidance concerning the "content" and "context" according to which it intends this discretion to be exercised; and ultimately by conflating an abuse of discretion itself with the reversibility of the error caused by it.

¶ 40 Initially, I consider it unwise to tinker with the content of the so-called modified-

*Allen* instruction at all. As a matter of policy and psychology every bit as much as law, and (as the majority notes) as the result of much debate and development within the profession, we in this jurisdiction long ago arrived at a group of advisements we believed could safely encourage a jury having difficulty reaching a unanimous verdict to do its duty, without unduly pressuring it to reach consensus. See *Allen v. People,* 660 P.2d 896, 898 (Colo.1983) (recounting the 1971 directive of the Chief Justice of this court paralleling Standard 15–5.4 of the American Bar Association Standards for Criminal Justice Relating to Trial by Jury). To the extent the majority is concerned with matters other than the jury's inability to reach a verdict, such as specific questions the jury asks or the effect of counsel's conduct on the standard of review for error, those considerations are adequately controlled by other bodies of law altogether. *See, e.g., Leonardo v. People,* 728 P.2d 1252, 1256 (Colo. 1986) (instructing trial courts concerning their duty to answer jury questions); *see also Horton v. Suthers,* 43 P.3d 611, 618–19 (Colo.2002) (discussing the invited error doctrine). Making the content of the modified-*Allen* charge contingent upon some amorphous and ill-defined notion of discretion, rather than the more specific law developed to govern these largely procedural variations, simply makes less, rather than more, clear the choices facing a trial court.

¶ 41 In its self-described holding, the majority concludes that a trial court is not required to provide a mistrial advisement when giving a modified-*Allen* instruction, but that it has the discretion to do so when a mistrial advisement will not have a coercive effect on the jury. Maj. op. ¶¶ 4, 33. Apart from the fact that the very question before this court is whether giving or failing to give a mistrial advisement does, in fact, have a coercive effect, this formulation leaves unclear (at least to me) whether the majority intends that a trial court will remain safe from reversal by choosing not to give any such advisement at all or whether the exercise of its discretion to give or not to give such an advisement must depend upon the extent to which giving or failing to give it would be more coercive; and if the former, whether by discretion to instruct the majority simply means the trial court has the option to do what it wants, without being subject to review for abuse of discretion at all.

¶ 42 Although the term "discretion" can have a wide-range of meanings, *see generally* George C. Christie, *An Essay on Discretion,* 5 Duke L.J. 747 (1986), we have on a number of occasions made clear its meaning with regard to judicial review in this jurisdiction. In its abstract sense, judicial discretion implies the absence of any settled legal standard that controls the controversy at hand. *People v. Riggs,* 87 P.3d 109, 114 (Colo.2004) (citing *Buckmiller v. Safeway Stores, Inc.,* 727 P.2d 1112, 1115 (Colo.1986)). Judicial discretion therefore means that the court is not bound to decide the issue one way or another, but has the power to choose between two or more courses of action and is not bound in all cases to choose one over the other. *Id.* (citing *Buckmiller,* 727 P.2d at 1115; *People v. Milton,* 732 P.2d 1199, 1207 (Colo.1987), *see also* R. Aldisert, *The Judicial Process* 704, 706 (2d ed. 1996)). Because there is no single correct answer, under any given set of facts, the outcome is never predetermined by the failure of either party to shoulder a burden of persuasion, and review of the court's decision is limited to an inquiry into whether the court abused its discretion in making the choice that it did. Discretionary decisions will not be disturbed unless the court's action was manifestly arbitrary, unreasonable, or unfair. *Id.* (citing *Milton,* 732 P.2d at 1207). However, discretionary decisions by trial courts clearly are not free from judicial review for arbitrariness.

¶ 43 In its only example of a circumstance in which a trial court should consider exercising its discretion to give a mistrial advisement, the majority suggests that giving one might be appropriate "when a jury has actually indicated a mistaken belief in indefinite deliberations." Maj. op. ¶ 33. Apart from the far-fetched nature of the premise, it is unclear to me why instructing about the possibility of a mistrial would be any less improper in this circumstance, or what the trial court could possibly tell the jury that would not violate our strong disapproval of so-called "time-fuse" instructions, on the one hand, *see*

*Allen*, 660 P.2d at 899 n. 2 (expressly disapproving "the practice of threatening a mistrial if a verdict is not returned by a specific time"), or create even more uncertainty in the minds of the jurors, on the other. Presumably even the majority would consider it improper to answer what the jury is most certainly concerned about: either how much longer it must deliberate before being permitted to leave or what effect its failure to reach a unanimous verdict will ultimately have on the defendant's fate. Should a jury ever be kept so long, or be so desperate, as to actually believe it might be sequestered in perpetuity, rather than giving a further instruction, anything short of declaring a mistrial would seem, according to the rationale of the modified-*Allen* charge, to strongly imply an abuse of discretion.

¶ 44 If by never saying never the majority is primarily concerned not to create a rule mandating reversal whenever a trial court instructs in a manner that could be considered a time-fuse instruction, then I believe it confuses the question whether the court has actually abused its discretion, with the question whether there is a sufficient likelihood that its abuse of discretion affected the outcome of the case. See Maj. op. ¶ 30. Whether the court's instruction is given in response to a jury question, or the acquiescence (or even request) of defense counsel are all matters affecting the reversibility of any error, not the content required, or permitted, of a modified-*Allen* instruction. Unlike the majority, I would find that the modified-*Allen* instruction, approved for encouraging a jury having difficulty in reaching a unanimous verdict, represents an objective determination of the extent to which a jury may safely be encouraged to do its duty, without applying undue pressure. To the extent a trial court has failed to properly answer a question from the jury or has erred by instructing or declining to instruct as moved by one or the other of the parties, I consider that to be a matter controlled by other applicable law—not the content of the modified-*Allen* instruction.

¶ 45 I therefore concur in part and concur in the judgment of the court.

I am authorized to state that CHIEF JUSTICE RICE and JUSTICE EID join in the concurrence in part and concurrence in the judgment.