2014 CO 69

**Aaron Allen FAIN, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**Supreme Court Case No. 12SC46**

Supreme Court of Colorado.

June 30, 2014

---

Attorneys for Petitioner: Douglas K. Wilson, Public Defender, Sarah A. Kellogg, Deputy Public Defender, Denver, Colorado.

Attorneys for Respondent: John W. Suthers, Attorney General, Christine C. Brady, Senior Assistant Attorney General, Denver, Colorado.

JUSTICE HOOD delivered the Opinion of the Court.

¶ 1 In this case and two companion cases decided today, *Gibbons v. People*, 2014 CO 67, 328 P.3d 95, and *Martin v. People*, 2014 CO 68, 329 P.3d 247, we consider whether a trial court must inform a jury that a mistrial will be declared if it cannot reach a unanimous verdict when giving a modified-*Allen* instruction.

¶ 2 A modified-*Allen* instruction is a supplemental jury instruction designed to encourage, but not coerce, a deadlocked jury into reaching a unanimous verdict. To accomplish this, the instruction informs the jury that it should attempt to reach a unanimous verdict; that each juror should decide the case for himself or herself; that the jurors should not hesitate to reconsider their views; and that they should not surrender their honest convictions solely because of others' opinions or to return a verdict. *See* CJI-Crim. 38:14 (1983 & Supp.1993); *see also* Chief Justice Directive No. 14 (1971). We approved this instruction as non-coercive in our own "*Allen*" case, *Allen v. People*, 660 P.2d 896 (Colo.1983).

¶ 3 Since approving this instruction, a line of authority has developed in the court of appeals adding another component: "In addition, the [modified-*Allen*] instruction *must* inform the jurors that if it appears to the trial court that a unanimous decision cannot be reached, they will be excused and a mistrial will be declared." *People v. Raglin*, 21

P.3d 419, 423 (Colo.App.2000) (emphasis added). A later division of the court of appeals rejected *Raglin*'s mistrial advisement requirement and prohibited such advisements as "inherently coercive." *See People v. Gibbons*, —— P.3d ——, ——, 2011 WL 4089964 (Colo.App. No. 09CA1184, Sept. 15, 2011). The court of appeals here adopted the *Gibbons* division's per se rule prohibiting mistrial advisements to find no error, let alone plain error, in the trial court's failure to instruct the jury about the possibility of a mistrial. *People v. Fain*, No. 08CA2061, slip op. at 22, 2011 WL 5999000 (Colo.App. Dec. 1, 2011) (not selected for official publication).

¶ 4 In another case announced today, we rejected *Raglin*'s mistrial advisement requirement and the *Gibbons* division's per se rule prohibiting such advisements. *Gibbons*, 2014 CO 67, ¶¶ 3, 26, 328 P.3d 95. We held that a trial court is not required to provide a mistrial advisement when giving a modified-*Allen* instruction. The trial court has discretion to instruct a deadlocked jury about the possibility of a mistrial when, considering the content of the instruction and the context in which it is given, the instruction will not have a coercive effect on the jury. The court should consider exercising its discretion in rare circumstances, for example when a jury has actually indicated a mistaken belief in indefinite deliberations. *Id.* at ¶¶ 4, 33.

¶ 5 To apply that holding to this case, we recount the relevant facts and procedural history.

## I. Facts and Procedural History

¶ 6 One day after work, Aaron Fain stopped at a restaurant and drank three glasses of wine. He then bought a bottle of wine on his way home. At home, he and his fiancée drank the wine and then went out to dinner, where he drank some more. Later, they argued over Fain's drinking, which had been an ongoing problem. Fain wanted to go out. His betrothed gave him an ultimatum: either stay home, or leave and continue drinking, in which case their relationship would be over. Fain left and drank at various bars, eventually ending up at another restaurant.

¶ 7 Fain began to harass two female patrons, whom the restaurant owner knew. He intervened, poured out Fain's glass of wine, and asked Fain to leave, which he did without incident. Fain then drove home, got a handgun, and returned to the restaurant, where the owner and two other men were sitting outside. Fain crept forward in his car, fired several shots from an open window, and then sped away. Nobody was injured. The three men called police and provided a description of Fain and his car.

¶ 8 Later, police pulled Fain over and arrested him. The three men positively identified Fain as the shooter, and police recovered the gun from his car and ten shell casings from outside the restaurant.

¶ 9 The prosecution charged Fain with six counts of attempted murder, two for each victim: attempted first degree murder after deliberation and attempted first degree extreme indifference murder. He was also charged with criminal mischief, driving under the influence (DUI), and various weapons offenses.

¶ 10 Fain conceded the criminal mischief, DUI, and weapons offenses, but he contested the attempted murder charges. His theory of defense was that "he was so intoxicated, there's no way he could have formed the intent to commit murder." Fain testified consistently with this theory, claiming he could recall only "snapshots" of the shooting.

¶ 11 After Fain presented his case, the jury began to deliberate at about noon. The next morning, at about 9:15 a.m., the court told the parties that the jury was having difficulty reaching a unanimous verdict. According to the jury's written note to the trial court, "One juror will not change their viewpoint, and stated they will not change it. This is on all counts of attempted murder." The court told the parties that it was inclined to give a modified-*Allen* instruction and asked if either party objected to its suggestion. Neither did.

¶ 12 The court did not read the jury's note in front of the jurors, instead telling them that it understood that the jury "had not been able to reach ... unanimous verdicts as to some of the counts":

Let me tell you, if there's any counts that you can reach unanimous verdicts on, you should return a verdict on those counts. I don't know whether you can or not, I'm not telling you what to do, but you must consider all the counts.

¶ 13 The court then read a modified-*Allen* instruction that tracked the pattern instruction and concluded by telling the jury that, if it could not reach a unanimous verdict on any count, "then let [the court] know." Soon after, the jury found Fain guilty of all three counts of attempted second degree murder, three counts of attempted first degree extreme indifference murder, and the conceded counts.

¶ 14 On appeal, Fain argued that the trial court plainly erred by failing to instruct the jury about a mistrial if it was unable to reach a unanimous verdict. For support, Fain cited *Raglin*, the court of appeals' case announcing the mistrial advisement requirement. *Raglin*, 21 P.3d at 423. Without a mistrial advisement, Fain contended that the modified-*Allen* instruction coerced the jury into reaching a compromise verdict. The court of appeals rejected this argument for the same reason the *Gibbons* division did: because mistrial advisements are "inherently coercive." *Fain*, slip op. at 22.

¶ 15 Fain sought certiorari, and we agreed to review whether *Raglin*'s mistrial advisement requirement is consistent with our precedent.[1] For the reasons stated in *Gibbons*, ¶¶ 23–27, we conclude that it is not.

■■■ ¶ 16 We hold that a trial court is not required to provide a mistrial advisement when giving a modified-*Allen* instruction. The trial court has discretion to instruct a deadlocked jury about the possibility of a mistrial when, considering the content of the instruction and the context in which it is given, the instruction will not have a coercive effect on the jury. The court should consider exercising its discretion in rare circumstances, for example when a jury has actually

indicated a mistaken belief in indefinite deliberations.

## II. Standard of Review

■■■ ¶ 17 Trial courts have discretion to give a modified-*Allen* or other supplemental instruction to the jury. *See Allen*, 660 P.2d at 898. We accordingly review that decision for an abuse of discretion. *See id.*; *see also People v. Schwartz*, 678 P.2d 1000, 1012 (Colo.1984). But where, as here, the defendant has not requested a specific supplemental instruction (such as a mistrial advisement) or otherwise objected to the trial court's decision to give a modified-*Allen* instruction, we review for plain error. *See People v. Miller*, 113 P.3d 743, 750 (Colo.2005). As the court of appeals has explained in the modified-*Allen* context, the point of such instructional objections is to give trial courts an opportunity " 'to prevent error from occurring' in the first place." *People v. McNeely*, 222 P.3d 370, 374–75 (Colo.App.2009) (quoting *People v. Stewart*, 55 P.3d 107, 120 (Colo. 2002)).

## III. Application

¶ 18 Fain argues that the trial court plainly erred by instructing the jury to continue deliberating without inquiring into the nature of the deadlock or the fruitfulness of more deliberations. Fain claims that the trial court's modified-*Allen* instruction targeted the lone holdout juror and coerced the jury into rendering a compromise verdict. In his view, the trial court could have corrected its error by instructing the jury about the possibility of a mistrial.

■■■ ¶ 19 Before giving a modified-*Allen* instruction, the trial court should "determine whether there is a likelihood of progress towards a unanimous verdict upon further deliberations." *Schwartz*, 678 P.2d at 1012 (citing *People v. Lewis*, 676 P.2d 682, 687 (Colo.1984)). "Even in the case of a prolonged and unproductive deliberative process, we have cautioned that any additional

---

1. We granted certiorari in this case, as well as in *Gibbons v. People*, 2014 CO 67, and *Martin v. People*, 2014 CO 68, to consider the following issue:

Whether Colorado's modified-*Allen* instruction requires a trial court to inform the jury that if it cannot reach a unanimous verdict then the jury will be dismissed and a mistrial will be declared.

instruction directed towards averting a deadlocked jury should be preceded by" such an inquiry. *Lewis*, 676 P.2d at 687. The reason for this requirement is to minimize the potential that a modified-*Allen* instruction will coerce a hopelessly deadlocked jury into reaching a compromise verdict. Following this determination, the court "must then exercise its discretion in deciding whether the instruction should be given." *Schwartz*, 678 P.2d at 1012.

¶ 20 The jury's note stating that one juror's viewpoint "will not change" effectively answered the inquiry trial courts should make before giving a modified-*Allen* instruction. *See id.* (approving the trial court's decision to declare a mistrial despite not asking about the likelihood of further progress); *Lewis*, 676 P.2d at 687 (noting that, "[e]ven in the case of a prolonged and unproductive deliberative process," a trial court should inquire about the likelihood of progress). But requiring the trial court to ask about the likelihood of progress, where the jury has already answered that question, would elevate form over substance. *See Schwartz*, 678 P.2d at 1012. "[T]he rationale for this requirement is that any judicial effort to avert a deadlocked jury must carefully avoid any constraint on the free and untrammeled deliberative process that expresses the conscientious conviction of each individual juror." *People v. Ragland*, 747 P.2d 4, 5 (Colo. App.1987).

¶ 21 Here, before the jury communicated its status to the trial court, deliberations had been fairly short: the jury had been discussing the case for only half a day. The court then gave the pattern modified-*Allen* instruction, which reminded the jury how to arrive at a verdict, and it made no further comments that could be interpreted as coercive. Indeed, neither party objected to the trial court's approach. And, in any event, we fail to see how a mistrial advisement would have cured the trial court's alleged error in failing to inquire about the likelihood of progress. Consequently, we reject Fain's contention.

¶ 22 We are also not persuaded that the trial court's instruction targeted the lone holdout juror or could have been interpreted as doing so. The trial court declined to read the jury's note in front of the jury, lessening any possibility that the lone holdout juror would have felt singled out by the trial court's instructions. Before giving the modified-*Allen* instruction, the trial court made clear that the jury "must consider all the counts" and reach unanimous verdicts on only those counts that it could: "I don't know whether you can or not, I'm not telling you what to do." The modified-*Allen* instruction reinforced the trial court's statement by encouraging the jurors to reach a unanimous verdict only "if you can do so without violence to your individual judgment." And the court's concluding remark gave jurors the option of "let[ting the court] know" if they could not reach a unanimous verdict. Considered as a whole and in context, these instructions encouraged the jury to reach a unanimous verdict—but only if it could.

¶ 23 But, like Gibbons, Fain does not ultimately focus on what the instructions contained; he focuses on what they omitted. Finding no error in the trial court's instructions, Fain's argument that a mistrial advisement was needed to correct that alleged error necessarily fails. Still, as our holding makes clear, a trial court is not required to give a mistrial advisement. Instead, it should consider exercising its discretion to do so in rare circumstances, for example when a jury has actually indicated a mistaken belief in indefinite deliberations. So for that additional reason, the trial court could not have erred, let alone plainly erred.

¶ 24 We conclude that the trial court did not err by failing to instruct the jury about the possibility of a mistrial.

## IV. Conclusion

¶ 25 For the reasons stated, we affirm the judgment of the court of appeals.

JUSTICE COATS concurs in part and concurs in the judgment, and CHIEF JUSTICE RICE and JUSTICE EID join in the concurrence in part and concurrence in the judgment.

JUSTICE COATS, concurring in part and concurring in the judgment.

¶ 26 I agree fully with the majority's decision to overrule the court of appeals holding in *People v. Raglin,* 21 P.3d 419 (Colo.App. 2000), and to hold instead that an additional advisement concerning mistrial need not be included in a modified-*Allen* instruction. For the reasons articulated in my separate opinion in *Gibbons v. People,* 2014 CO 67, 328 P.3d 95, also released today, I do not concur, however, in the remainder of the majority opinion, advising as it does that "[a] trial court has discretion to instruct a deadlocked jury about the possibility of a mistrial when, considering the content of the instruction and the context in which it is given, the instruction will not have a coercive effect on the jury." Maj. op. ¶ 16.

¶ 27 I therefore concur in part and concur in the judgment of the court.

I am authorized to state that CHIEF JUSTICE RICE and JUSTICE EID join in the concurrence in part and concurrence in the judgment.